## EDMUND WIGGINS ET AL. v. EMMA WIGGINS ET AL.

### Decided May 12, 1897.

**1. Parol Evidence to Show Deed a Mortgage.**

Parol evidence is admissible to show that purported conveyances by deed absolute and a contemporaneous written agreement reciting privilege of repurchase, notwithstanding it contains admissions that the deed was not intended as a mortgage, still, in the absence of testimony showing that they had been relied on in such a manner as to constitute an estoppel, were intended as a mortgage to secure the loan of money.

**2. Same—Lease Contract—Disputing Landlord's Title.**

Though, under the instruments, defendants were tenants of plaintiff, they could show the truth and dispute his title.

**3. Trespass to Try Title—Pleading—Special Defense—General Issue.**

The suit being one to recover land in trespass to try title, by virtue of a conveyance thereof by defendant, and not for foreclosure of a mortgage, a special plea merely that the land was defendants' homestead when the conveyance was made presented no defense, and did not authorize the introduction of evidence. Such plea would not prevent the defendants from showing, under their plea of not guilty, that the conveyance was in fact a mortgage, and void because given on the homestead.

**4. Deed Intended as Mortgage—Subsequent Purchaser.**

A purchaser from the grantee, with notice that the latter's deed was intended as a mortgage, would acquire only such rights as his grantor had.

**5. Same.**

If the deeds by defendants, absolute on their face, were intended to operate as mortgages, defendants being in possession of the land, plaintiff could not recover it, though his mortgage lien was valid and defendants had defaulted in the payment of the secured debt. Plaintiff's remedy would be a suit to foreclose his lien.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH.

*N. B. Williams,* for appellants.—1. The testimony rejected should have been admitted when offered under appellants' plea of not guilty, to show, or as tending to show, that the deeds under which appellees claim title from appellants were, when executed, understood and intended by and between all the parties to be and operate as a mortgage to secure borrowed money. A deed absolute on its face can be shown by parol evidence to be a mortgage. 82 Texas, 156; 63 Texas, 296; 83 Texas, 408; 29 Texas, 289; 74 Texas, 362; 5 Texas, 100; 34 Texas, 440; 6 Texas, 292. A deed absolute on its face can be shown by parol evidence, under a plea of "not guilty," to be a mortgage. 25 Texas, 271; 11 Texas, 670. The superior title does not follow the vendor's lien or the vendor's lien notes

out of the hands of the vendor. 52 Texas, 262; 55 Texas, 458; 70 Texas, 135.

2. The court should not have charged the jury peremptorily for appellees, but should have held that the deed from Pope Easter to appellees and the written contract entered into contemporaneously with said deed between appellees and appellants, and the $100 note executed by Edmund and Jake Wiggins to Pope Easter, being one transaction, constituted a mortgage. Stampers v. Johnson, 3 Texas, 1; 12 Otto, 318; 8 Texas, 395; 52 Texas, 453.

3. The court erred in charging the jury peremptorily, because where there is a written instrument, as explained by oral testimony, it is peculiarly within the province of the jury to construe the same, and not within the province of the court, and in withdrawing the construction of said instrument from the jury the court erred. 52 Texas, 453; 5 Texas, 93.

*Felix H. Robertson* and *Jno. W. Davis*, for appellees.—1. The defendants were not compelled to plead ther title specially, but when they elected to plead specially they were properly confined in their evidence to proof of the title so pleaded. Railway v. Whitaker, 68 Texas, 633.

2. The court correctly rejected parol testimony offered by appellants to vary and contradict a written instrument relied on by appellants, which appellants had previously introduced. Jackson v. Stockbridge, 29 Texas, 398; Wooters v. Railway, 54 Texas, 299.

3. The court below rightfully refused to allow the defendants below to dispute the title of their landlord after the introduction by the defendants below of a contract between the parties establishing the relation of landlord and tenant between appellees and appellants. Tyler v. Davis, 61 Texas, 676.

KEY, Associate Justice.—This is an action of trespass to try title. The defendants pleaded not guilty, and that the property in controversy was their homestead.

After hearing the testimony ruled to be admissible, the court instructed the jury to return a verdict for the plaintiffs for the land sued for, "and for such sum as rent as you find from the evidence is due." Verdict and judgment were rendered for the plaintiffs for the land in controversy and $126 as rent, which sum appellees have remitted in this court. The defendants have appealed.

The case was tried on the following testimony:

"1. It is agreed that James I. Moore is the common source of title to the land in controversy.

"2. Plaintiffs put in evidence a warranty deed from James I. Moore to Edmund Wiggins, dated November 26, 1887, reciting the consideration, a note for $810 payable to the Waco Building Association in fifty monthly installments of $16.20 each.

"3. Plaintiffs put in evidence the warranty deed from Edmund Wiggins and wife, Hasty Wiggins, to Pope Easter, dated April 1, 1892, recit-

ing consideration of $135.70 cash in hand, and the further consideration of the assuming and paying off the balance due the Waco Building Association on Edmund Wiggins' note, amounting to $364.30, and recorded April 4, 1892.

"4.　Plaintiffs put in evidence a release from the Waco Building Association to Edmund Wiggins reciting the payment by Pope Easter of the balance due on the note to said association, dated November 15, 1892, and filed for record November 16, 1892.

"5.　Plaintiffs put in evidence the warranty deed from Pope Easter to Emma Wiggins, reciting the consideration of $750 paid by Emma Wiggins, and the further consideration of $100 note, payable in three months, to Pope Easter, and signed by Jake Wiggins and Edmund Wiggins, said deed being dated April 3, 1893, and filed for record April 5, 1893.

"6.　Plaintiffs put in evidence a release from Pope Easter to Emma Wiggins, reciting payment of balance of purchase money on her purchase from Edmund Wiggins.

"7.　Defendants put in evidence the following written agreement, to wit:

"*The State of Texas, County of McLennan.*—Whereas, on the 1st day of April, 1892, Edmund Wiggins and wife executed to Pope Easter a warranty deed for certain house and lot on North Fourth street, in Waco, which deed is duly recorded in the deed records of McLennan County, Texas, in vol. 87, on page 331; and whereas, there was a verbal agreement between said Pope Easter and said Ed Wiggins that said Ed Wiggins should have the privilege of repurchasing said house and lot from said Easter for $700, provided he should pay said sum before April 1, 1893; and whereas, said Wiggins has failed to make said payment as aforesaid, and said Easter has this day sold said house and lot to Emma Wiggins, and said Emma Wiggins now agrees to leave said Ed Wiggins in possession of said premises free of rent until April 1, 1895, and said Ed Wiggins shall have the privilege of buying said premises from said Emma Wiggins for the sum of $850, provided they pay said sum of money and 10 per cent per annum interest on same from this date until date of said payment. After April 1, 1895, said Ed Wiggins shall surrender the premises to Emma Wiggins, provided he has not prior to that date made the purchase as above stipulated.

"In testimony of all of which, we the following parties in interest herein have hereto set our hands, this the 3d day of April, 1893.

　　　　　　　" JAKE WIGGINS, EMMA WIGGINS,
　　　　　　　" EDMUND WIGGINS AND HASTY WIGGINS."

And this instrument was acknowledged by all the signers thereto.

"8.　Pope Easter, a witness for the plaintiff, testified as follows: I bought the land in litigation in this cause from Edmund Wiggins and his wife, Hasty Wiggins.　I bought it on 1st day of April, 1892, and paid

$500 for it; $364.30 of the consideration I paid to the Waco Building Association, and the remainder I paid to Edmund and Hasty Wiggins.

"On cross-examination witness testified: That at the time he bought the place he agreed with the defendants that they might have it back at the expiration of one year, if they would at the expiration of that time pay him $750. At the expiration of the year he went to the defendants and told them that their time was up, and that if they did not take the place upon the agreed terms he was going to sell it to some one else.

"9. Jake Wiggins, one of the plaintiffs, testifying in his own behalf, stated that he was the husband of Emma Wiggins and that Edmund Wiggins was the husband of Hasty Wiggins; that his wife bought the place in litigation from Pope Easter on the 3d day of April, 1893, and that his wife paid $750 in cash for the place, and that he and Edmund Wiggins executed a note for $100 to Pope Easter, due in three months, as a further consideration for said place."

Bill of exceptions number 1 shows that "the defendants offered to prove by the witnesses Edmund Wiggins and Hasty Wiggins, who were sworn and placed on the stand to testify in behalf of the defendants, that the property in controversy was and had been the home of the defendants since 1887; that they were married and heads of a family; that the alleged deed from the defendants to Pope Easter, dated April 1, 1892, was understood, intended, and agreed by and between the defendants and Pope Easter to be and operate as a mortgage on said homestead to secure a loan of $500, which said amount was loaned by the said Easter to these defendants, and that the said Emma and Jake Wiggins, plaintiffs herein, were present at the time of the execution of said instrument, and knew that it was intended by the parties thereto to be and operate as a mortgage upon said homestead. And then when said $500 (that these defendants owed to said Pope Easter, and to secure which amount he held a mortgage on these defendants' homestead) fell due, and in order to pay off said loan, these defendants applied to the plaintiffs for the loan of money enough to pay off said mortgage to Pope Easter, which said amount the plaintiffs lent to these defendants, and to secure said loan these defendants executed to the plaintiff a mortgage on their said homestead. That the deed from Pope Easter to Emma Wiggins, dated April 1, 1892, was executed by said Easter at the instance and request of these defendants, and that it was intended, understood, and agreed by and between these defendants to be and operate as a mortgage upon the land it purported to convey, and that it was executed by the said Easter to the said Emma Wiggins simply to avoid the expense of a double transfer (that is, the expense of executing a deed from Easter to these defendants and then these defendants making a deed to plaintiffs); that at the same time said instrument from Pope Easter to plaintiff was executed these plaintiffs and defendants herein entered into a written agreement, which said agreement and the deed from Pope Easter was intended to be and operate as one instrument. That these defendants have been in possession of said premises since 1887, and that they have never paid rent to any one, and that

they have always paid the city, county, and State tax; that they never sold said property to Pope Easter nor to Emma Wiggins. To all of which said evidence and testimony plaintiffs' attorneys objected, upon the ground that the same was not admissible under the defendants' pleadings filed herein, and because the pleadings of the defendant were not such that the court could grant affirmative equitable relief, and because plaintiffs, under the evidence, were the owners of the vendor's paramount title by reason of the deeds and releases in evidence, as explained by the testimony, and because said evidence was irrelevant and improper in form and substance; which said objection was by the court sustained, and all of said testimony was by the court excluded, to which said action and ruling of the court the defendants then and there excepted."

The trial judge attached to the bill of exceptions the following explanation: "In reference to the proposed bill of exceptions hereto attached, and presented to me by counsel for defendants, I make this statement: It was in proof that Edmund Wiggins and Hasty Wiggins were husband and wife, and had lived on the property in controversy as their home for several years. That they bought the property of James I. Moore, paying part cash and giving their notes for balance, and received the deed with vendor's lien retained. Being unable to pay the vendor's lien note, and being pressed for the money, they arranged with Pope Easter to advance the money for them, and took conveyance from Wiggins and wife, and Easter conveyed to the plaintiffs. At the time of making said conveyance to the plaintiff, it was understood that defendant and wife should have the privilege of repurchasing said property. All of these facts were made to appear by the written evidence. The answer of the defendant set up no equity, and contained no offer to pay for the land. There was no mortgage executed or in evidence. There was, however, a vendor's lien which passed by regular conveyance to the plaintiff."

*Opinion.*—Appellants assign as error the action of the court in excluding the testimony referred to in bill of exceptions number 1. We sustain this assignment, reverse the judgment, and remand the cause.

The excluded testimony tended to show that two of the instruments under which the plaintiffs claimed the property, although deeds in form, were executed for the purpose of securing certain debts, and were intended to operate as mortgages.

The general rule, that the grantor in an instrument purporting to be an absolute deed may show by parol or other extraneous testimony that the instrument was intended to operate as a mortgage to secure a debt, is too well settled in this State to require citation of authorities.

The existence and correctness of this general rule are not denied by counsel for appellees; but it is insisted that this case does not come within the rule referred to, because the excluded testimony would have contradicted the terms of the written instrument put in evidence by appellants, dated April 3, 1893, showing that the agreements between appellants and Pope Easter, and between appellants and appellees, were that appellants

should have the right and privilege of repurchasing the property by the payment of specified sums of money within specified times—in other words, that the written instrument referred to shows that the deeds were not intended to operate as mortgages, but as absolute conveyances, and that the agreements were that appellants should only have the right to repurchase the property.

It is true, this instrument contains written admissions which support appellees' theory that the two deeds were not intended as mortgages, and that appellants only reserved the right to repurchase the land; but such written admissions, in the absence of testimony showing that they had been relied upon by appellees in such manner as to constitute an estoppel, would not preclude appellants from showing the real facts. Having the right to contradict by extraneous evidence the certain and unambiguous terms of the deeds themselves, the appellants necessarily have the right to contradict equally certain and unambiguous terms of the written agreement executed at the same time and as part of the same transaction with one of the deeds. In other words, if, as the excluded testimony tended to show, the appellants borrowed money from Pope Easter and from appellees, and executed writttten instruments intended only to secure the payment of the money, it matters not in what form the instruments may have been written, nor whether they show an absolute and unconditional sale of the property, or a sale coupled with the right to repurchase, such instruments will, under the doctrine which prevails in this State, be treated as mortgages.

What has just been said disposes of the further proposition relied upon in support of the ruling of the court below, to the effect that the instrument in question shows that appellants were tenants, holding under appellees, and therefore could not dispute appellees' title. Appellants, having the right to show that the deed itself did not speak the truth, had also the right to show that the writttten instrument executed at the same time did not embody the actual agreement between the parties.

It is also contended by counsel for appellees that appellants had specially pleaded their title, and were limited to the defense so pleaded, which would not include the facts which the excluded testimony tended to prove.

In addition to the plea of not guilty, appellants made the following plea: "And that said premises herein sued for was the homestead of defendants, who were married persons and the head of a family, prior to the date of the execution of the alleged deed by defendants to Easter, and has so continued and is now his homestead, and has continuously been since 1887 occupied by defendants as their homestead."

If it could be held that this plea embodied any defense to the plaintiffs' suit we might sustain the position taken by appellees' counsel; but the plea quoted will not stand the test of a general demurrer, and therefore it amounts to no plea. Although the property may have been occupied and used by appellants as a homestead, if appellees had title thereto, such use by appellants could not defeat appellees' right to recover the property.

Hence, as this plea failed to state any defense whatever, and could not form the basis for the introduction of testimony, the case should have been tried just as if this plea had not been filed and the defendants were resting upon their plea of not guilty.

Although not insisted upon in appellees' brief, we have considered the statement in the trial judge's explanation of the bill of exceptions, that the vendor's lien had been conveyed to plaintiffs, and the defendants' answer set up no equity and contained no offer to pay for the land.

James I. Moore was common source of title, and it was not shown that he had transferred his lien to the plaintiffs. On the contrary, it was shown that the Waco Building Association, to whom the consideration for the deed from James I. Moore to appellants was payable, had released the land to appellant Edmund Wiggins. It is true, Pope Easter executed a release to Emma Wiggins, reciting payment of the balance of the purchase money on her purchase from Edmund Wiggins; but if the deed under which Pope Easter held was only a mortgage to secure the payment of a debt, then Pope Easter did not convey absolute title to the land by his deed to Emma Wiggins, and neither his deed nor release could vest in Emma Wiggins any better or greater right to the land than he himself had.

If the deeds in question were intended to operate as mortgages, appellants being in possession of the land, appellees could not recover it from them, although they may have defaulted in the payment of the secured debt. Appellees' remedy would be a suit to foreclose their lien. Duty v. Graham, 12 Texas, 427; Hannay v. Thompson, 14 Texas, 142; Mann v. Falcon, 25 Texas, 271; Morrow v. Morgan, 48 Texas, 304; Loving v. Milliken, 59 Texas, 423.

For the reasons given, the judgment is reversed and the cause remanded.

*Reversed and remanded.*