Duty v. Graham.

Duty v. Graham.

A mortgage in this State is a mere security for the payment of the debt; the mortgagor remains the real owner of the land and entitled to its possession; and the mortgagee cannot sustain an action of tresspass to try title or ejectment against the mortgagor, on the mortgage.

Where a debt which is secured by mortgage is barred by the Statute of Limitations, the creditor has no remedy upon the motgage.

Appeal from Red River. Action of trespass to try title by the appellee against the appellant, commenced May 2nd, 1848. The plaintiff relied on a mortgage from John J. Vining, dated March 18th, 1844, to secure the payment of $735 on the first day of January, 1845. The defendant claimed by purchase from the heirs of John J. Vining. John J. Vining died in April, 1844; and the plaintiff failed to present the claim to his administrator within the year. There was a demurrer in the Court below to the plaintiff's evidence, which was overruled; the case submitted to the Court, and judgment for the plaintiff.

*Pease* and *Everts*, for appellant. It is contended that under this mortgage, the premises could not be recovered by an action of ejectment, at the present day, in any country where the Common Law prevails. For the action of ejectment in such cases, is only allowed because at Common Law the fee is considered as vested in the mortgagee; but the estate recovered in such an action is not an absolute estate, for it is liable to be divested on payment of the debt by the mortgagor, and a Court of Equity will allow the mortgagor to redeem the estate, and require the mortgagee to account for the rents and profits, (4 Kent's Com. 166 to 168,) and he is treated as a trustee. (2 Story's Equity, Sec. 1015 & 1016.)

At the present day, under the Common Law as well as the

Civil Law, a mortgage is considered and treated as a mere security for the debt. The only right or interest acquired by the mortgagee is that of having his debt paid out of the property. The action of ejectment and the suit in Equity for foreclosure are not rights growing out of the mortgage, nor incidents of the mortgage, but they are mere remedies for the enforcement of it, and these remedies are suited to the manner of proceeding in the different Courts to which the mortgagee applies for relief. These different remedies are not known or recognized in this State, for although we have introduced the Common Law as the basis of our system of jurisprudence, yet we have never introduced the Common Law system of pleading and manner of enforcing rights in Courts of Justice. The Congress that introduced the Common Law, expressly declared "that the adoption of the Common Law should not be construed to adopt the Common Law system of pleading." (Acts of 4th Congress, page 88, Sec. 1.)

Our laws recognize but one form of action for the enforcement of private rights, whether they are legal or equitable; and our Courts are not confined to any particular form of giving relief. The party files his petition setting forth his rights and cause of action against the defendant, the Court in the same action considers and adjudicates upon legal and equitable rights. (See Acts 1st Legislature, page 365, &c.)

That this was the opinion of the Congress by which the Common Law was introduced, is apparent, for at the same session an Act to provide for the foreclosing of mortgages was passed. (Acts of 4th Con. p. 69.)

That our laws do not contemplate or permit an action of ejectment on a mortgage is also apparent from the fact that the Congress which adopted the Common Law also provided a mode of trying titles to land. (Acts of 4th Congress, p. 136.) This Act provides "that the method of trying titles to lands " or tenements, shall be by action of trespass, and if the jury " shall find for the plaintiff, they may in the same verdict " award damages for the mesne profits, and judgment shall be

" entered on such verdict, as well for the damages as for the " recovery of the land, &c." They could never have contemplated such a suit as a remedy on a mortgage, for a mortgagor cannot be treated as a trespassor, until the mortgagee has regularly recovered possession. (4 Kent's Com. 155.) The mode of enforcing rights at Common Law having never been adopted in this country, we must look to our own statutes for the manner of enforcing them, and we look to our own statutes in vain, for any authority to support an action, like the present, on a contract to secure the payment of money, and this mortgage is nothing more than that.

The mortgage in this case is but an incident and security for the debt named in it. If the debt had been assigned the mortgage would have followed it. No action could have been sustained on it, except by the holder of the debt. (4 Kent's Com. 194.) If the debt is paid, it is an extinguishment of the mortgage, and if a right of action on the debt is barred by limitation, there is nothing left to support the action on the mortgage.

The rule is that where a Court of Equity and a Court of Law have concurrent jurisdiction, if the right of action would be barred at law, a Court of Equity will not give relief, and certainly a different rule will not be adopted where the same Court considers and adjudicates all the rights of the parties equitable and legal.

*A. Morrill*, for appellee. The first point, presented in this case, is raised by the demurrer and contained in the question, Can a mortgagee in fee maintain a suit to recover the possession of the mortgaged property ?

Passing over the English authorities, we appeal at once to writers of our own country. Chancellor Kent says, "Upon " the execution of a mortgage, the legal estate vests in the " mortgagee, subject to be defeated upon performance of the condition." (4 Kent, 154.) " Technically speaking the mort- " gagor has at law only a mere tenancy and that is subject to

"the right of the mortgagee, to enter immediately, and at his "pleasure, if there be no agreement to the contrary. He may "at any time when he pleases and before a default, put the "mortgagor out of possession by ejectment or other proper "suit. This is the English doctrine, and I presume it prevails "very extensively in the United States." (4 Kent, 155.) A mortgagee or his assignee who has the legal estate, may maintain ejectment. (Roscoe on Real Actions, 125, 139; Powell on Mortgages, 176. note F; 2 Story's Eq. Sec. 1017; 2 Ed. Ch. R. 80; 2 Fonbl. Eq. Book 3, Chap. 1, Sec. 3, note 1; 2 Greenl. Ev. Sec. 329.)

It is evident from the foregoing authorities, that whether our Courts are Courts of Law or Courts of Equity or both, the action can be sustained, unless there be some statute denying the authority. The only mortgage Acts in force that I have seen, are the Acts of 1838, page 134, Acts 1840, page 69, Acts 1846, page 394, Sections 118 and 119. And these Acts, it will be seen, have reference to the foreclosure of mortgages and nothing else. It is neither expressly or impliedly contained in either of these Acts, that the only remedy of a mortgagee is to foreclose; but the whole tenor and effect of them is to prescribe the form of an action to foreclose a mortgage in the same way that the Divorce Act prescribes a form for divorces, and the Act of Trespass to try Title, a form to recover real property.

At Common Law and in the Common Law States, a mortgagee has three distinct and separate remedies. Each or all he can use, either at different times or simultaneously, till he receives payment of his debt, unless the respective remedies are barred. These remedies are,

1st. An action of debt on the note.

2nd. An action to recover possession.

3rd. An action to foreclose the mortgage. (Powell on Mortgages, 966 and note G; Id. 1001, note G and H; 3 Mason, 474; 7 Cranch, 737; 5 Cowen, 380; Kirby, 254; Root, 201; 9 Serg. & Rawle, 302; 10 Johns. N. Y. R. 481; Coote on

Mortgages, 518; 11 New Hampshire R. 321; 1 Alabama R., new series, 743; 2 Fonblanque Eq., Book 3, Ch. 1, Sec. 8, note q; 6 Johns. Ch. R. 78; 3 Johns. Ch. R. 330; 10 Johns. R. 481; 2 Fonbl. Eq., Book 3, Ch. 1, Sec. 8, note s.)

When, therefore, the statutes of Texas prescribe the method of foreclosing the mortgage, it would require a very forced construction to say that by this foreclosure is meant that the mortgagee could not disregard his mortgage, if he should choose, and bring an action of debt on the note, or that there is implied in the Mortgage Act, that the mortgagee could not take possession of the mortgaged property either before or after the breach of the condition.

It is not contended that the mortgagor or those holding under him, cannot at any time within a certain number of years after the mortgagee has got possession by virtue of the mortgage, recover the property by paying the debt. As long as the equitable title of the mortgagor exists, he can enforce this equity by simply doing equity. (1 Story's Eq. Sec. 59; 2 Id. Sec. 1034: 2 Fonbl. Eq, Book 3, Ch. 1, Sec. 9.)

" Payment of the mortgage debt is good defence to an ac-
" tion at law brought by the mortgagee against mortgagor to
" obtain possession of the mortgaged premises." (2 Greenlf. Sec. 330.) And it is a little singular, that Professor Greenleaf, and other authors should have neglected to state any other defences to an action of this kind, except payment, fraud and usury, if there be any others. So far however from any defence of this kind being set up, it is agreed in the statement of facts that no payment has been made.

There is one more aspect in which the case can be viewed. Admitting that both the note and foreclosure of the mortgage are barred either by the Act of Limitations or anything not affecting the real merits of the case at bar, should that fact be pleaded to this action.

The foregoing authorities, and especially the case cited in 1 Alabama R. 743, and 11 New Hampshire R. 321, establish conclusively that there is a great difference between extin-

guishing a right and extinguishing a remedy; and also when a person has two remedies, and they stand independent of each other. The existence or destruction of one does not effect the other. "If an injured party has a right to either of two "actions, the one he chooses is not barred because the other, "if he had brought it, might have been." (5 Pick. R. 198.)

"If the payment of a note be secured by mortgage and the "note be barred by the Act of Limitations and mortgage not, "the party may pursue his remedy on the mortgage which is "not." (2 Smedes & Marshall, R. 687.) "The statute of "limitations does not discharge or extinguish the debt, it only "bars the remedy by action, so that a lien in respect of the "debts is not destroyed though the remedy by suit to recover "the debt be gone." (Chitty on Contracts, 806.) "Although "the statute of limitations bars the remedy after six years, the "debt is not extinguished, it still exists, and the debtor is "under a moral obligation to discharge it." (Ib. 821.)

HEMPHILL, CH. J. The subject matter of this controversy has already been three times before this Court, and as often decided against the present appellee. He has a note against John J. Vining, deceased, secured by mortgage on the tract of land which he has recovered in this controversy, and the substance of the former decision in relation to this note and mortgage was, that inasmuch as they had not been presented in the time prescribed by law, under the Act of 1840, to the administrator, no suit could be maintained upon them, nor judgment had for their recovery or for the foreclosure of the mortgage; that all monied claims were required to be presented, under the 17th Section of the Act of 1840, and that a failure was a bar to recovery, and that a debt secured by mortgage on specific property formed no exception to the general rule, and was consequently barred if not presented within the time prescribed by statute; and that it was barred not only as against the administrator, but as against the heirs and creditors of the estate.

But it is contended by the appellee, that notwithstanding the debt is barred and that with this bar his remedy by statute is gone, yet that he is entitled to the land itself under an action of ejectment or an action of trepass to try the title.

Whether an action by the mortgagee, to recover possession of the land, would lie in this State, must depend (if it be not excluded by implication under our statute,) upon the character of right or title under which he holds. If his right be superior to that of the mortgagor, then on default of the latter he might recover and hold possession, at least until payment out of the rents. But if the mortgagor have the superior right or title, he should be entitled to possession unless there were some special stipulation to the contrary.

We will attempt now, by a survey of the authorities, to ascertain which has the better title; and we will perceive in this inquiry, that there has been the greatest contrariety of views on the subject, between Courts of Law and Courts of Equity; and even these have sometimes not been consistent with themselves. The conflict of opinions and views has finally terminated in giving a vast superiority, at least in equity, to the right of the mortgagor over that of the mortgagee.

It seems that at law, upon the execution of a mortgage, the legal estate vests in the mortgagee, subject to defeasance upon performance of conditions. Technically speaking, the mortgagor has a mere tenancy, and is subject to be put out at any time, even before default, by the mortgagee. But even under the severe rules of the Common Law, the mortgagor has some rights. He is not subject to the payment of rents, and can lease, sell and deal with the land as owner, so long as he remains in possession, persons under him taking subject to the rights of the mortgagee. But when we ascend to the views entertained of mortgages in Courts of Equity, we find an almost complete change of principles. The estate of the mortgagor, so narrow and precarious at Common Law, is by equity enlarged to the real ownership of the fee. The mort-

28

gage instead of being a conveyance of the land, subject to defeasance, is held to be but a chattel interest, a mere security for the debt. The estate of the mortgagor is in equity tantamount to that of the mortgagee, and is descendable by inheritance, devisable by will, and alienable by deed. (4 Kent, p. 160.) It is vendible on an execution at law, and chargeable with the dower of the wife, where that estate is known; whereas the estate of the mortgagee is not the subject of execution before foreclosure, (at least before entry,) though there has been default and the mortgage is forfeited. (4 Kent, 161-2.) In equity the debt is considered the principal, and the mortgage only the incident, and the discharge or forgiveness of the debt at any time before foreclosure, extinguishes the mortgage, and no reconveyance is necessary to restore title to the mortgagor.

"An assignment of the debt by deed, by writing simply or "by parol, is said to draw the land after it as a consequence "and as being appurtenant to the debt. The one is regarded "as the principal, the other the accessory and *onme princi-* "*pale trahit ad se accessorium*. The assignment of the in- "terest of the mortgagee in the land, without an assignment "of the debt, is considered to be without meaning or use. "This is the general language of the Courts of Law as well as "of the Courts of Equity; and the common sense of the "parties, the spirit of the mortgage contract and the reason "and policy of the thing, would seem to be with the doctrine." (4 Kent.)

It seems, then, that in equity the debt is the principal thing. The land is but an incident of the debt, and the mortgagor notwithstanding the terms of the conveyance, remains the real owner of the fee. Why, under such circumstances and such rights in the mortgagor, the mortgagee should have been entitled to oust the mortgagor and take possession is not very easily to be perceived, especially when such possession does not give him the land, but he is accountable for the rents and profits. There might be some reason to permit such right to

be enforced at law, where, in equity, he is entitled to a corresponding and in fact still higher right under a decree of strict foreclosure, by which the land is secured to him in absolute property ; or where there are separate jurisdictions, the mortgagee may have some sort of pretence to resort to both to enforce his rights. But is there any sufficient reason why such an accumulation of suits should be tolerated under our system of jurisprudence, in which equity and law are incorporated with each other, and under our code of procedure, which abhors a multiplicity of suits between the same parties relative substantially to the same subject matter ; and especially where the new action, proposed in augmentation of other remedies, is one of a most oppressive character, by which the real owner of the land is to be dispossessed, for the benefit of one who has but an unfair interest or title to the land ? Could it be permitted for a moment, in this State, that a mortgagee should simultaneously institute three different suits for the recovery of the same debt, one on the note or bond, another to forclose the mortgage, and a third to recover possession of the land itself, although it seems that this tripartite division of the debtor to respond to the thrice repeated exactions of the creditor, is suffered in other States in which the jurisdictions of law and of equity are still preserved separate and distinct. Such an attempt will perhaps never be made, but if so, it would certainly end in defeat and in mulcting the plaintiff with costs in two of the suits. In fact, under our procedure, there can be no pretence that any other remedy than that prescribed by statute is necessary to do justice to the mortgagee. It affords all the redress which can be extracted from either the property mortgaged or any other property of the mortgagor. True, it does not award to him the land. No such thing as strict foreclosure is known, (and that is one evidence that the Legislature intended that the mortgagee should not have the land, and consequently that he should not recover it in ejectment,) but it gives him judgment for his debt, and for the sale of the property mortgaged, if the same can be found,

and if the proceeds be insufficient or if the property cannot be found, then he is to have further execution against the defendant for the balance or the whole of the debt, as the case may be. (Art. 773, Dig.) The form of the judgment shows that there is no necessity for a separate suit on the bond or note. They, with the mortgage, constitute but one cause of action ; and if there be no note or bond, the judgment is still the same, viz: for the debt and for the foreclosure of the mortgage ; and this judgment would be given (being prescribed by the statute) without any express covenant for the payment of money being inserted in the mortgage. It thus appears that every judgment rendered on a mortgage in this State, is equivalent to a judgment at law on the bond and of foreclosure in Courts of Equity, and is coextensive, in its operations, with both of those judgments. In fact the terms of our statutes on the foreclosure of mortgages are such as might be fairly held to exclude the hypothesis that an action could be maintained for the land itself. They speak of suits being instituted for the enforcement of specific liens on property, and they prescribe judgments which subject not only the property under mortgage, but all the property of the defendant to the satisfaction of the debt; and it is a reasonable conclusion that if the Legislature intended there should be any further or other remedy for the enforcement of " specific liens," some intimation of an intention to that effect would have been given. The universal construction has been, so far as I have any knowledge, that there is no other remedy ; and the present is believed to be the only instance in which any other was ever attempted.

In New York, it seems that by statute the action of ejectment by a mortgagee or his assigns has been abolished, an alteration in the law which is commended by Chancellor Kent in his Commentaries as a desirable improvement, that action not being a final remedy, but vexatious, terminating in a litigious matter of account and deterioration of the premises. (4 Kent, p. 156, Note.) It appears also, that by statute in

the same State, the mortgagee is in effect inhibited from pursuing his remedies simultaneously in both Courts. (4 Kent, 184.)

But there seems no necessity for special provision to that effect, by statute, in this State. There is but one jurisdiction in which to bring suits, and as a matter of course it would not permit a multiplicity about the same subject matter. Nor does there appear any positive necessity to abolish the remedy by ejectment, where in fact it has never been introduced in practice, and the law affords a remedy so ample, comprehensive and perfect as to legitimately exclude the idea that any other mode of redress would have been intended or allowed.

But whether an action of trespass to try title could be maintained in any case, it certainly could not be permitted after the debt, the principal to which the mortgage was but an incident, is barred and lost. The lien by the mortgage on the land was but an incident to the debt, and when the principal falls, the incident must fall with it. The debtor, to secure the appellee against loss, had hypothecated this tract of land, and the law had provided most energetic and ample remedies to enforce the lien thus given. But the time within which the law would afford its aid was limited, and the appellee having failed to avail himself of these aids in the time prescribed, cannot justly ascribe his loss to any other cause than his own laches, nor can he require the Courts to introduce and adopt new and unusual remedies for his relief.

It is not necessary to again discuss the policy of our statutes, in requiring all claims to be presented to the administrator, before suit can be brought, nor to show that mortgage debts are included in the general designation of money claims. These have been sufficiently considered in the previous decisions relative to this controversy. (1 Tex. R. ; 2 Tex. R.)

It is ordered, adjudged and decreed that the judgment be reversed and that judgment be rendered for appellant.

Reversed and re-formed.