### J. A. WILLIAMSON, EXECUTOR, v. J. E. HUFFMAN.

Delivered June 11, 1898.

1. **Mortgage of Land by Deed Absolute—Parol Proof.**

A deed absolute on its face may be shown to be a mere mortgage by parol evidence of the intention of the parties under a plea of not guilty in a suit to recover the land.

2. **Same—Legal Title—Limitation.**

A transaction for the purpose of securing a loan whereby a conveyance of land is made to the borrower who reconveys the same to the lender, retaining a vendor's

lien, is in legal effect a mortgage, and the lender's interest in the land is lost where the debt has become barred by the statute of limitations.

APPEAL from Dallas.  Tried below before Hon. EDWARD GRAY.

*Thomas & Turney,* for appellant.

*Kearby & Muse* and *McCormick & Spence,* for appellee.

FINLEY, CHIEF JUSTICE.—J. A. Williamson, as executor of the estate of one Mrs. C. C. Brown, deceased, as plaintiff, by a first amended original petition, sued upon a note for $500, alleged to have been made and delivered by defendant to plaintiff's testatrix, alleging that it had been given as consideration for and purchase money of the lands in controversy, and plaintiff prayed for judgment for the amount due on the note with foreclosure of the vendor's lien reserved in the deed from plaintiff's testatrix to the defendant.

To this amended pleading the defendant answered, (1) by general denial, (2) by special plea of the statute of limitation of four years against the note sued upon, and (3) defendant alleged in his defense that plaintiff's testatrix was never in truth the real owner of the land in controversy; that she never in reality owned or possessed the title to said land, and was never the bona fide vendor thereof, nor in possession, and defendant therefore alleged that she was in reality never anything more than a mortgagee, out of possession, of said land as security for the note declared upon by plaintiff, for this: That on December 31, 1891, defendant was the owner, as he for many years prior thereto had been, of all of said lands, and has been such owner continuously since and in possession thereof. That on said date, defendant being in actual and exclusive possession of said land, and being desirous of effecting a loan of money and borrowing the sum of $500, applied to plaintiff's testatrix for a loan, and she then agreed to loan defendant said money, the repayment thereof to be secured by lien upon the land in controversy. That the sole purpose of carrying out the agreed transaction and accomplishing such purpose, and to effect and secure the said loan of money only, the defendant did execute and deliver his deed of conveyance to plaintiff's testatrix to said land, for which no consideration whatever was paid to him, defendant. That such conveyance was made solely in pursuance of agreement between him and plaintiff's testatrix aforesaid, and to enable her to reconvey the land to defendant, and recite in her conveyance back to defendant the reservation of a vendor's lien to secure the loan of money aforesaid. Thereupon plaintiff's testatrix received defendant's deed, but as a part of the same transaction, reconveyed the identical land back to defendant, reciting, as was agreed, the consideration to be $500, to be paid one year after date, according to the tenor of a certain note then executed by defendant to plaintiff's testatrix, and thus the said loan of money was effected. That the entire transaction out of which sprung the note sued upon was in truth and in law only a device

to secure the repayment of borrowed money, and but a mortgage lien upon the lands in controversy. That said note so given and herein sued upon was barred by the statute of limitation of four years, and hence that the lien upon the land aforesaid had lapsed and become null and void, and plaintiff had no right to or interest in said land. That neither plaintiff nor his testatrix had ever been in possession of any part of said land, but, as was always intended, the defendant had continuously been and was then in exclusive possession of said land, and plaintiff's testatrix was never at any time anything else than mortgagee, out of possession of said land, and that her mortgage had become lost and had terminated by reason of the facts aforesaid, and because the debt was outlawed.

The plaintiff, by first supplemental petition filed in reply to defendant's said answer, pleaded that defendant by said answer had lost his "right of redemption" to the land in controversy; and sued the defendant in the ordinary form of trespass to try title to recover the lands in controversy.

Defendant by first supplemental answer excepted to this pleading; and then answered by a general denial and plea of not guilty; and then by special plea renewed his defense that plaintiff's testatrix was never in reality the bona fide owner or vendor of the land in controversy to the defendant, but that the entire transaction between plaintiff's testatrix and defendant was nothing more than a device to secure the loan of $500 made by plaintiff's testatrix to defendant, and which loan of money had lapsed and plaintiff's cause of action had become barred by the statute of limitation of four years. Wherefore, plaintiff had lost all lien or right in or to the lands in controversy. Upon trial before the court, without a jury, judgment was rendered for defendant, from which judgment this appeal is prosecuted by appellant Williamson.

The evidence upon which the judgment is based is set forth in the statement of facts, as follows:

Plaintiff introduced in evidence a deed with general warranty clause, executed by Mrs. C. C. Brown to J. E. Huffman, describing and purporting to convey the land in suit—the deed showing the consideration to be $500, evidenced by a note made by J. E. Huffman to the order of Mrs. C. C. Brown, of even date with the deed, due in one year from date, with interest at the rate of 10 per cent per annum from date, for the sum of $500, the vendor's lien to secure said note being reserved in said deed, said deed being dated December 31, 1891, and acknowledged on same date before J. D. Fouraker, notary public. The clerk's file mark and certificate of registration thereon showing that said deed was filed in the office of the county clerk of Dallas County, Texas, December 31, 1891, at 11:15 a. m.

Plaintiff next introduced the note described in his second amended original petition herein, and also described in said deed, being a note signed by J. E. Huffman, dated December 31, 1891, to the order of Mrs. C. C. Brown, for the sum of $500, with 10 per cent interest from date, due in one year, and retaining the vendor's lien upon the land described in

plaintiff's petition and involved in this suit to secure its payment; said note was indorsed and credited by annual payments of interest each year up to but not including the year 1897, which note is unpaid and barred by limitation. Said deed above described was the original deed and was produced on the trial by defendant's counsel, upon notice given to them by plaintiff, and it was admitted by defendant's counsel that said deed was brought to them by the defendant.

The defendant, as his evidence, introduced the same deed above described, and then called upon plaintiff's counsel, pursuant to notice theretofore given to said counsel, to produce the original deed described in the defendant's pleadings, from the defendant J. E. Huffman to said Mrs. C. C. Brown, describing the land involved in this suit, the said deed reciting a cash consideration of $500, said deed being dated December 31, and the clerk's file mark and certificate of registration showing that it was filed in the office of the county clerk of Dallas County on December 31, 1891, at 11:15 a. m.

Defendant then proved by Kenneth Foree, county judge of Dallas County, as his witness, that he knew Mrs. C. C. Brown during her life-time; that he knew her well; that he had once drawn a will executed by her, which will was, however, afterward revoked. That Mrs. Brown for many years lived with witness' mother-in-law, Mrs. Fisher, in Dallas County, and there the witness frequently saw her and she conversed with witness about her business affairs. That the said Mrs. C. C. Brown conversed several times with the witness about the transaction with the defendant Huffman, always stating that she had made a loan of $500 to Huffman, and that she held his note and a mortgage therefor. That on one occasion Mrs. Brown produced and handed witness the deed above described from J. E. Huffman to her, stating that that was her mortgage to secure the loan of $500. Witness examined the paper, and stated to Mrs. Brown that she was mistaken about that being a mortgage, that it was a deed; but Mrs. Brown insisted that it was a mortgage to secure the loan by her to the said defendant Huffman of $500.

The witness Foree further stated that he had known Huffman for many years, and had known the land involved in this suit for fifteen years. Witness knew the location of the land involved in this suit. It is a part of the Huffman farm on which Huffman lives, and Huffman has been in continuous possession of the land, cultivating it as a farm, for some ten years or more. Said land in December of 1891 was worth from $40 to $45 per acre at the market price and on the market. That Mrs. Brown in talking to witness mentioned several loans of money that she had made, among others, one to Mr. Fisher, witness' father-in-law, and one to Mr. Smith; and in that connection spoke of the loan she had made to defendant Huffman, and discussed with witness his solvency and ability to pay.

By J. D. Fouraker, another witness, who took the acknowledgment of the deeds above described, defendant proved that the defendant Huffman, in December, 1891, came to witness' office and stated that he was going to

borrow $500 of Mrs. Brown, and wanted to secure her by lien on his land, and told him that he, Huffman, wanted witness to draw the deed from himself to Mrs. Brown, and also a deed back from Mrs. Brown to Huffman, and also a note for $500, due in one year, all of which was done by witness under instructions from Huffman. That the deeds were acknowledged respectively by Huffman and Mrs. Brown before the witness, one December 30th, and the other December 31, 1891, as shown by the deeds themselves, which witness then held in his hands. That said deed, however, and the note were all delivered at the same time. Witness' recollection was clear that all three of the instruments were delivered to Huffman. Witness did not recollect having had anything to do with Mrs. Brown, except that she signed one deed and he took her acknowledgment. Huffman paid witness for drawing those instruments and the taking of the acknowledgments. Huffman told witness that he wanted the papers drawn in order to get a loan of money from Mrs. Brown for one year, and the papers were drawn under defendant's directions. That there was no consideration for the deed from J. E. Huffman to Mrs. C. C. Brown that witness knew anything about. Witness never saw any money or other thing paid by Mr. Huffman for the deed, but may have seen Mrs. Brown give Huffman $500 in money or by check when all the papers were delivered. On cross-examination by plaintiff's counsel, witness stated that if Mrs. Brown gave the defendant Huffman a check for $500 that it might have been a consideration for the deed.

The defendant was then proceeding to introduce other witnesses, having called one Mrs. Lower to the stand; and thereupon the court asked plaintiff's counsel if he took issue with the defendant's counsel upon their contention and position that the transaction evidenced by the deed and note introduced in evidence was in reality but a method of securing a loan of money from Mrs. Brown to defendant, and that the note was made without an intention of affecting said land otherwise than as security for said loan, and thereupon plaintiff's counsel in open court answered that he did not controvert that position, but admitted that the deeds and note were drawn and delivered over for the purpose of securing to the said Mrs. Brown a loan of money which she then made to the defendant Huffman. And thereupon the court stated to defendant's counsel that he did not care to hear any further testimony on that issue, and no further testimony was introduced, save upon the issue of the value of the land in controversy herein.

Whereupon the defendant introduced the following witnesses: Mr. Browder and defendant Huffman, by whom it was shown that the land was worth from $30 to $45 per acre in December, 1891. And then the plaintiff introduced the following witnesses: Mr. Chinault, J. A. Williamson, and Mr. Fisher, whose testimony was to the effect that the land in December, 1891, was worth from $1 to $35 per acre.

The evidence necessarily leads to these conclusions of fact:

1. Mrs. Brown was not the owner of the tract of land in controversy at the time she executed the deed to Huffman.

2.   The transaction between Mrs. Brown and Huffman was simply a loan of money by Mrs. Brown to Huffman, and Huffman deeded the land to Mrs. Brown with the understanding that she should immediately deed it back to him, taking his note for $500 to cover the loan, and reserve in the deed a lien upon the land to secure the payment of the $500, reciting it to be purchase money for the land.   These conveyances were not intended to pass and vest title, but only to secure the loan of $500 made by Mrs. Brown to Huffman.   There is no controversy as to the facts; only questions of law are involved and presented for decision.

*Opinion.*—Appellant contends that the legal title to the land passed to Mrs. Brown by the deed from Huffman; that her reconveyance to Huffman left the legal title in her; that Huffman had only the equitable right to redeem the title by payment of the $500 loaned, which these conveyances were intended to secure, and that having pleaded the statute of limitations to the debt, forfeited that equity, and Mrs. Brown should recover the land upon her legal title.

In Duty v. Graham, 12 Texas, 427, it is held that a mortgage is a mere security for debt, and the mortgagor remains the owner of the land, entitled to the possession, and the mortgagee can not sustain an action of trespass to try title against the mortgagor.   And further, that when the debt is barred by limitation the creditor can not maintain a suit for the debt and foreclosure of the mortgage.

In Mann v. Falcon, 25 Texas, 272, the doctrine of the Duty case was affirmed; and it was further held that a deed absolute upon its face may be shown to be a mere mortgage by parol evidence of the intention of the parties, and that this may be done simply under the plea of not guilty.

These principles are reaffirmed in other cases, and have never been overturned by any of our decisions.

In the case of McKeen v. James, 87 Texas, 193, Mr. Justice Gaines expressed his individual disapproval of the holding in Mann v. Falcon; but recognized that the doctrine was established in this State and should be adhered to as a rule of property.   If the question were an open one, the judgment of the writer would lead him to the same conclusions expressed by Mr. Justice Gaines.   It would serve no good purpose, however, to discuss a legal question which our Supreme Court has announced to be so thoroughly settled as to become a rule of property.   In the Mc-Keen case the plaintiffs sued in trespass to try title, claiming under a deed absolute on its face.   The defendants claimed by purchase from the assignee of the grantor in such deed, and they pleaded specially that the conveyance was intended by the parties to be simply a mortgage given to secure a debt.   The plaintiffs then amended their pleadings, and asked that in the event is was determined that the conveyance was merely a mortgage, that they have judgment for foreclosure of the mortgage lien; to which plea the statute of limitations was interposed by defendants.   It was found by the jury that the conveyance was simply a mortgage, and that the debt was barred by limitation; and it was held that the plaintiffs could not recover the land, because they did not own the title, and that

they could not have a foreclosure of the mortgage lien because the debt was barred by limitation. See same case in 23 Southwestern Reporter, 460, for opinion of the Court of Civil Appeals, referred to in the opinion of the Supreme Court, for a full statement of the facts and discussion of the principles involved in the case.

We think these cases settle the questions involved in this suit, and that the distinctions sought to be drawn by counsel for appellant between the cases discussed and this case are not well founded. This view leads to the conclusion that the proper judgment was rendered by the court below, and that the assignments of error presented are not well taken. The judgment is affirmed.

*Affirmed.*