MARIA J. OBERLENDER, APPELLEE, V. JOSEPH O. BUTCHER
ET AL., APPELLANTS.

FILED FEBRUARY 4, 1903. No. 12,439.

Commissioner's opinion, Department No. 1.

1. Trust: PURCHASE MONEY: CLAIMANT: PARTIAL CONTRIBUTOR: ALIQUOT PART OF PREMISES: RESULTING TRUST. The rule that no trust arises in land purchased for another's benefit, unless the purchase money is furnished at the time, nor, if the claimant is a partial contributor, unless there is an agreement that he shall have an aliquot part of the premises, is restricted to resulting trusts, and has no application to express trusts or those arising by agreement.

2. Statute of Frauds: CESTUI QUE TRUST: POSSESSION: TRUST AGREEMENT. The statute of frauds is satisfied where the cestui que trust takes possession of land purchased in pursuance of a trust agreement, notwithstanding it is oral.

3. Possession: CESTUI QUE TRUST: NOTICE. Such possession on the part of the cestui que trust is notice to all the world of his rights in the land.

APPEAL from the district court for Cedar county. Suit in equity to enforce a parol trust in certain real estate. Heard below before GRAVES, J. Trust declared. Affirmed.

NOTA BENE.

Maria J. Oberlender, as plaintiff, instituted this action October 6, 1900, and in her petition alleged that Joseph O. Butcher, her son, in the month of October, 1898, acting for and on behalf of herself, purchased certain lots in the village of Coleridge, Nebraska, for which he agreed on behalf of plaintiff to pay the sum of $148.50; that said Butcher, acting for the plaintiff, erected a house on said lots of the value of $300; that, while the said house was in the course of construction, plaintiff paid said Butcher the sum of $400, for the purpose of paying for said land

Syllabus by court; catch-words by editor.

Oberlender v. Butcher.

and house; that, when said house was completed, Butcher notified plaintiff, who was then in Missouri, that the house was ready for her; that, on or about November 1, 1898, she moved into and occupied the house, and continued to occupy the same till, to wit, August 25, 1900; that, upon her arrival at Coleridge, she inquired for her deed to the lots and was informed by Butcher that it would be produced; that after repeated demands Butcher informed her that the title to the lots was in his name, when she demanded that he convey the property to her; that on the 8th day of January, 1900, Butcher, without the consent of plaintiff, conveyed the property to the defendant Douglas A. Meigs, with full knowledge, on the part of the grantee, that the plaintiff was the owner of said lots; that, on the 29th day of January, instant, said Douglas A. Meigs and Lottie R. Meigs, his wife, executed a mortgage on said premises to the defendant William G. Waite for the sum of $300, with the full knowledge, on the part of the grantee, of the rights of the plaintiff in the premises; that, on the 25th day of August, 1900, said Douglas A. Meigs wrongfully and unlawfully entered into possession of said premises, put the plaintiff out of such possession, and refuses to surrender possession thereof. Then followed an allegation of equitable ownership and legal title in trust, closing with a prayer that a trust be declared and the mortgage canceled.

A demurrer was filed by Lottie R. Meigs, which the lower court did not pass upon.

By an answer filed January 9, 1901, defendant Butcher admitted the execution and delivery of both the deed and the mortgage, but denied the other allegations in plaintiff's petition; and alleged that on the 22d day of August, 1898, the plaintiff was in a destitute condition; that her health was broken and she had no means by which to support herself and family; that she requested the answering defendant to help her; that he, then and there, agreed to help if she would leave her husband and live with said defendant; that he would provide a home for

her; and that to assure plaintiff of the performance of his part of the agreement, he deposited in the Nodaway Bank the sum of $500, subject to her order, which she, then and there, accepted, with the express agreement that as soon as answering defendant should decide on a location she would send this money with which to build a house, and, when completed, would leave her husband and live with said defendant Butcher; that pursuant to such agreement Butcher came to Coleridge, Nebraska, purchased and paid from his own money for the property in controversy and took the deed therefor in his own name, erected a house thereon, which, together with the lots, cost over $700; that pursuant to said agreement plaintiff sent Butcher $350, and on the completion of said house came to Coleridge accompanied by her husband, contrary to said agreement; that he protested against the husband occupying said house and continued to protest until about the month of April, 1899, when, on account of the abusive conduct of the husband of plaintiff, Butcher was obliged to leave said house; that all the time he lived in said house he furnished provisions for plaintiff and himself as he had agreed; that he was in actual possession of the premises in controversy from the 12th day of September, 1898, to the 8th day of January, 1900, and at no time during said time was his title or right to the possession of said premises questioned, but that plaintiff held out to the public, and especially to the said Meigs, that Butcher was the absolute owner of the premises.

To this answer plaintiff filed a motion on January 26, 1901, wherein the court was asked to strike certain parts of said answer which referred to plaintiff leaving her husband, because said agreement was contrary to public policy. Said motion was sustained and leave given to file a second amended answer.

May 14, 1901, Butcher filed his second amended answer, which omitted the allegations stricken by order of court from the first amended answer. Douglas A. Meigs alleged good faith on his part.—W. F. B.

*Elberti Ready* and *Cassius H. Whitney*, for appellants:

Where possession is relied on as notice to purchasers of land as to equitable claims not of record, it must be so open and notorious as to indicate to neighbors who has the management. *Hubbard v. Kiddo*, 87 Ill., 578, 580.

*James C. Robinson* and *R. J. Millard, contra.*

LOBINGIER, C.

This is a suit in equity to enforce an alleged parol trust in certain real estate claimed by plaintiff to have been purchased by her son as a home for her. At the time the alleged arrangement was first entered into, the son, Joseph O. Butcher, one of the appellants, had just attained his majority and had received from his father's estate, through his guardian, the sum of $2,175 in cash. The appellee, his mother, who after his father's death had married a second time, was then living at Maryville, Missouri. It appears that Joseph had decided to give his mother a portion of the money which he had just received, and the two went together to the bank, where $500 of it was deposited to the appellee's credit, Joseph remarking to his mother, according to the testimony, "That's yours for a home." The son's relations with the stepfather, it seems, were not harmonious, and the former claims that the gift was made on condition that his mother should leave her husband. She denies any conditions, however, and other witnesses who were present say that no such terms were mentioned. Shortly after this the son left Missouri and came to Coleridge, in this state. It seems to be conceded that before leaving it was arranged between himself and his mother that he was to select a place for a home for her, to be purchased with the $500. She testifies that soon after his arrival at Coleridge he wrote her stating that he had found a place that he thought would suit, and asking her to send $330 or $400. There was some other correspondence between the parties, but none

of the letters were produced in evidence, having been lost, and it does not appear what their contents were. The tract selected by the son consisted of about three and one-half acres. He testifies that a deed to him for this property was delivered between September 10 and 20, 1898, and that he paid for it out of his own money, but it is nowhere shown that this deed was recorded. He also testifies that he paid for the materials for building a house on this tract, and for the digging of a well, and that he built a barn on the premises. The cashier of the Maryville bank testifies that the appellee obtained from him a draft for $350 on September 16, and appellee says she sent this amount to her son. The latter admits that he received some money from his mother, but says it was about the middle of October, after the lot and building materials had been paid for. When the house was ready for occupancy appellee and her husband came to Coleridge, and she testifies that she asked her son for the deed to the property on the evening of her arrival, and that he told her that her deed was in the bank. She also says that she advanced him further sums to pay bills for materials, amounting in all to $58.20, and that she settled another claim of this kind by surrendering a note which she held against the claimant. The son admits that the mother asked him for a deed, and says that he refused to give one, and told her that the place belonged to him. The parties, including the stepfather, occupied the premises jointly from the fall of 1898 until the following June, when Joseph left, unable, as he claimed, to live longer with his stepfather. On January 8, 1900, Joseph executed a deed to the premises to appellant Meigs for an expressed consideration of $500, and the latter subsequently mortgaged the property to appellant Waite. The petition prayed for a cancelation of both deed and mortgage, and that the plaintiff might be decreed to be the "real and equitable owner of the premises." After a hearing of the cause, a decree was rendered in accordance with the prayer of the petition and from this, defendants bring the cause here by appeal.

Appellants' main contention is that no trust arose because appellee did not send the money before or at the time the property was purchased by her son, and because the amount paid by her was not equal to the entire purchase price, and there was no agreement that she should have a specific share. The rules upon which this contention is based are applicable to resulting trusts or those which arise by implication of law from the presumed intention of the parties. Counsel on both sides refer to the facts of this case as disclosing a resulting trust. But as we interpret them they show an express and not a resulting trust, nor, indeed, an implied trust at all. There was an express agreement between the parties that the son should select a suitable place for his mother's home, and that the $500 which he had given her should pay the purchase price. It was an instance where a donor entered into an arrangement with his donee by which he became the trustee of the identical fund which he had just parted with as a gift, and the donee became the *cestui que trust*. It is obvious that such a trust is created by act of the parties, and is, therefore, express. The rules invoked by appellants have no application to express trusts, and the authorities on which they rely relate exclusively to resulting trusts. Perry, Trusts [3d ed.], sec. 132; *Pickler v. Pickler*, 180 Ill., 168; *Botsford v. Burr*, 2 Johns. Ch. [N. Y.], 404, 415; *Reed v. Reed*, 135 Ill., 482; *Lescalcet v. Rickner*, 16 Ohio C. C. Rep., 461; *Graham v. Selbie*, 8 S. Dak., 604; *Fessenden v. Taft*, 65 N. H., 39; *Logan v. Johnson*, 72 Miss., 185; 2 Pomeroy, Equity Jurisprudence, 1040.

Another objection to the decree is that the transaction is within the statute of frauds. As this is an express trust the statute is applicable here, and as the letters which passed between the parties were not produced there was no written evidence of the transaction. But the *cestui que trust* remitted her money on the strength of it, and afterward came from another state and took possession of the premises, and this, in the absence of writing, is a sufficient performance and execution of the trust to

take it out of the statute. 2 Reed, Statute of Frauds, secs. 889, 890.

Appellee and her husband were in the possession of the premises when appellant Meigs received his deed from the son, and also when appellant Waite made the loan and took his mortgage. The record shows that Meigs was her nearest neighbor, and that Waite's agent who conducted the transaction for him was informed of appellee's possession. Under the decisions of this court, therefore, these appellants were chargeable with notice, not only of the fact that appellee was in possession, but also of her "right, title, and interest." *Uhl v. May*, 5 Nebr., 157; *Scharman v. Scharman*, 38 Nebr., 39; *Kahre v. Rundle*, 38 Nebr., 315; *Pleasants v. Blodgett*, 39 Nebr., 741, 42 Am. St. Rep., 624.

Whether in a proper proceeding Joseph Butcher might not be entitled to recover any sum which he has invested in the property in excess of that received from his mother we do not here determine, because he prays for no such relief in his answer and there is no satisfactory evidence as to just what the property cost.

Complaint is made concerning certain interlocutory rulings in reference to the pleadings, but these can not be considered in the absence of a petition in error. The questions of fact as to alleged admissions by appellee we consider settled by the adverse findings of the court. We therefore recommend that the decree be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.