**HOLMES et al. v. TENNANT. (No. 220–3349.)**

(Commission of Appeals of Texas, Section A. June 1, 1921.)

1. **Mortgages** ⬤⟳32(5)—**Whether deed is mortgage depends on extinguishment of debt.**

When a conveyance of land grows out of a pre-existing debt or loan of money, it must clearly appear that such debt is extinguished or it will be held that the conveyance is a mere change in the security.

2. **Mortgages** ⬤⟳39 — **Whether conveyance a mortgage or conditional sale held question of fact.**

In trespass to try title, whether a conveyance of land to mortgagee was a conditional sale or mortgage *held* a question of fact.

3. **Trusts** ⬤⟳13—**Rule requiring payment of part of consideration for land not applicable in cases of express trust.**

The rule requiring persons claiming that land is held in trust to show that they paid some part of the consideration is not applicable in cases of express trusts.

4. **Mortgages** ⬤⟳137—**Mortgagor remains owner of land.**

A mortgagor of land remains the owner thereof and holds it subject to the rights of the mortgagee.

5. **Mortgages** ⬤⟳596, 597—**Mortgagee held not entitled to invoke defense of stale demand.**

Since mortgagor of land remains the owner thereof and holds it subject to the rights of the mortgagee, the latter, or one holding his interest under a will, is not entitled, in a suit by mortgagor to have a trust declared in the land, to invoke the defense of stale demand.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by Mrs. I. R. Holmes and others against Jos. A. Tennant. From a judgment of the Court of Civil Appeals (211 S. W. 798) affirming a judgment for defendant, plaintiffs bring error. Judgments of trial court and Court of Civil Appeals reversed, and cause remanded for another trial.

A. B. Wilson, A. O. Blackwell, and Andrews, Streetman, Logue & Mobley, all of Houston, for plaintiffs in error.

Moody & Boyles and Wm. W. Anderson, all of Houston, for defendant in error.

TAYLOR, P. J. Mrs. I. R. Holmes, widow, A. N. McKay, Flora B. Lee, Margaret St. John Lee, James H. Lee, and Caroline Lee Hoskinson and husband, plaintiffs in error, sued J. A. Tennant, defendant in error, to recover 500 acres of land out of the Richardson Pearsall one-third league in Harris county, Tex. Plaintiffs in error are the assignees and legal representatives of T. W. Lee, I. R. Holmes, and A. M. and J. H. York. Defendant in error is the son of J. H. Tennant, and acquired whatever title he has directly through his father's will.

The first count in the petition states a cause of action in trespass to try title. The second alleges in detail the facts on which claim of title is based. Defendant in error pleaded the three, five, and ten year statutes of limitation, and not guilty.

The court instructed a verdict in favor of

defendant in error, and judgment was rendered accordingly. The Court of Civil Appeals affirmed the judgment. 211 S. W. 798.

The following rather full chronological statement of the facts is necessary to a clear understanding of the first question presented: John L. Carson was the common source of title. In February, 1893, he conveyed to T. W. Lee. On August 3, 1893, a written contract was entered into between J. H. Tennant, La Porte Wharfage & Improvement Company, and La Porte, Houston & Northern Railway Company, by which the Wharfage & Improvement Company agreed to cause to be conveyed to Tennant, together with other property, the land in question, with full power of sale, as collateral security for certain advances in money made by Tennant to the railway company for the purpose of completing the railroad. On September 11, 1893, T. W. Lee, at the request of the Wharfage & Improvement Company, deeded the land to Tennant. On the same date, and as a part of the same transaction, a second contract was made between the Wharfage & Improvement Company, the railway company, and Tennant, reciting, among other things, that Tennant should have power to sell the land in case the indebtedness owing him was not paid, but further that on payment thereof within the time agreed Tennant should reconvey the land to A. M. York, I. R. Holmes, T. W. Lee, and J. H. York, or to such persons as they might direct. On August 2, 1894, the railway company, T. W. Lee, I. R. Holmes, the two Yorks, and J. H. Tennant made another contract in which it is recited that the advances made by Tennant under the prior contracts of August 3d and September 11th amounted at that time to about $20,000. By the terms of the agreement other property was added to the security already held by Tennant on condition that the time of payment be extended to January 1, 1895. It was stipulated that on payment of the indebtedness Tennant should, among other things to be done by him, reconvey to the Wharfage & Improvement Company, or its order, all lands which were conveyed to him as collateral by the original contract. The contracts of August 3d and September 11th were by express provision made a part of the last contract, which was signed as follows:

"The La Porte, H. & N. R. R. Co., by A. M. York, Prest.; A. N. York, T. W. Lee, J. H. York, I. R. Holmes, J. H. Tennant."

On February 4, 1896, there was an execution sale of the land under a judgment against Lee, J. H. York, and others to the judgment creditor, American Tube & Iron Company, which is not a party to this suit. On February 28, 1896, J. H. Tennant sued the Wharfage & Improvement Company, the railway company, and T. W. Lee in the district court of Harris county, seeking foreclosure of a mortgage lien on the land here in controversy, alleged to have been created by virtue of the contracts of August 3d and September 11th, and the deed made by Lee to Tennant. The petition sets out the terms of the contracts, and alleged the amount due Tennant thereunder on January 1, 1895, was $21,500; that by virtue of various credits made on the indebtedness between that time and April 1, 1895, the balance due on January 1, 1896, including principal and interest, was $5,388.60. Foreclosure of the mortgage lien was prayed for. On October 8, 1897, Tennant amended his petition. He set out, in addition to the transactions alleged in the original petition, the contract of August 2, 1894, making the two Yorks and I. R. Holmes additional parties defendant, and alleging that they were personally liable to pay the debt sued on. Judgment and foreclosure were prayed for against them also. By a third amended original petition filed October 14, 1897, the Galveston, La Porte & Houston Railway Company, and its receivers, were made parties defendant as successors of the La Porte, Houston & Northern Railway Company. On April 20, 1898, J. H. Tennant, father of defendant in error, conveyed to O. C. Drew, trustee, by special warranty deed, the land in controversy. On the same date a contract was executed in duplicate between J. H. Tennant, O. C. Drew, and T. W. Lee, conditioned as follows:

"That the said J. H. Tennant has this day by the agreement and consent, and at the request of T. W. Lee sold and conveyed to said O. C. Drew, trustee, the following described land and premises: [Here follows a description of the land involved in this suit.]

"The said T. W. Lee is desirous of purchasing said land, and the said J. H. Tennant hereby agrees and binds himself to sell the said land to the said T. W. Lee for the sum of $6,608.61, with 8 per cent. interest from this date, and the taxes on said land for the years 1894, 1895, 1896, 1897, 1898.

"It is agreed that, if at any time up to the 1st day of May, 1899, but not thereafter, the said T. W. Lee shall pay the said J. H. Tennant the said sum of $6,608.61 with 8 per cent. per annum interest from this date to the date of conveyance, and shall also pay the taxes for 1894, 1895, 1896, 1897, and 1898, with 8 per cent. interest on said taxes from the date said Tennant may have paid the same, then the said O. C. Drew, trustee, shall convey said property to the said T. W. Lee, or any one to whom the said Lee may direct said conveyance to be made to.

"It is further agreed that in the event the said T. W. Lee does not pay the amount hereinbefore provided for on or before the 1st day of May, 1899, that then, on or after said date, the said trustee shall convey said land to the said J. H. Tennant, his heirs or assigns, in fee simple, and it is expressly understood and agreed that time is of the very essence of this contract, and that this contract of sale of said land shall be of no force or effect beyond said 1st day of May, 1899, and said Lee's option to buy the same on the terms hereinbefore stated

shall absolutely cease and expire on said date; that when such deed is made by said trustee it shall bind the parties hereto, their heirs and legal representatives, to warrant and forever defend against any and all claims whatsoever arising by, through, or under them, or either of them. * * * "

On May 2, 1898, the foreclosure suit brought by Tennant was continued by consent. On October 25, 1898, it was continued generally by agreement, and on December 5, 1898, was again continued generally. On May 13, 1899, the case was dismissed for want of prosecution, and on March 20, 1899, a motion to reinstate was sustained. On May 18, 1899, O. C. Drew as trustee conveyed the land to L. E. Brown, a feme sole, by special warranty deed. On November 14, 1899, the case was again dismissed for want of prosecution. On November 17, 1899, L. E. Brown conveyed the land to J. H. Tennant by deed recorded March 3, 1904. J. H. Tennant, now deceased, bequeathed the land to his son, defendant in error, who leased it in 1906 to W. E. Gay. Defendant in error claims that he has subsequently been continuously in possession of the land through his tenants, paying taxes thereon. The two Yorks in 1910 deeded the land to one of the plaintiffs in error. The other plaintiffs in error are the legal representatives of Lee and Holmes, deceased. There is evidence that the fair market value of the land was largely in excess of the amount specified in the contract of April 20th.

[1] The first question presented is whether the conveyance of April 20, 1898, together with the contract of the same date, set out above, was a conditional sale or mortgage.

It is stated in the brief of defendant in error, filed in the Court of Civil Appeals that on April 20, 1898, Tennant already had a mortgage on the land in suit, concerning the validity of which there was no question, and that a suit was then pending to foreclose it; that there is no evidence of a claim of indebtedness by Tennant against Lee, or any one else, thereafter.

[2] It is not necessary to discuss the evidence further, in view of the fact the contract is set out in full, than to point out that subsequent to its execution the foreclosure suit was continued by agreement, was dismissed, and later reinstated, all subsequent to the execution and delivery of the conveyance and contract under consideration.

It is stated in Ruffier v. Womack, 30 Tex. 332, that—

"When the transaction grows out of a preexisting debt or loan of money, it must clearly appear that such debt is extinguished, or it will be held that the new arrangement is a mere change in the security. * * * If by it there was a continuing obligation against the appellees for the debt, the transaction must be declared a mortgage, although it was expressly stated in the deeds that the debt was fully satisfied, and that it was expressly understood and agreed that the contract was intended as a conditional sale, and not a mortgage."

The rule stated has been reiterated frequently by the courts of the state. Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087; De Bruhl v. Maas, 54 Tex. 472; Alstin v. Cundiff, 52 Tex. 462; Gray v. Shelby, 83 Tex. 408, 18 S. W. 809. Our conclusion is that it is a question of fact, under the rule laid down and the evidence stated, whether the conveyance and agreement of April 20, 1898, taken together, constitute a mortgage or conditional sale.

The conclusion reached above is not at variance with the view expressed in the opinion of the Court of Civil Appeals in regard to that question. The court was of opinion further, however, that it was immaterial that the instruments referred to amounted only to a mortgage, for the reason that Lee's title passed out of him prior to his death through the execution sale of February 4, 1896; that neither Holmes nor the Yorks are in any way connected with the title by the evidence.

Whether there is evidence that Holmes and the Yorks had an interest in the land in controversy is the second question presented.

The agreement of September 11, 1893, contains the following stipulation:

"On the payment of said amount * * * he (J. H. Tennant) shall reconvey and deed the said 500 acres of land to said A. N. York, I. R. Holmes, T. W. Lee, and J. H. York, or to such persons as they may direct the deed to be made to."

The contract of which the foregoing excerpt was part, as well as the prior contract of August 3d, was by express reference made a part of the contract of August, 1894. The last amended original foreclosure petition filed by Tennant contained allegations to the effect that the defendants, Lee, the two Yorks, and Holmes were partners doing business in the name of the Wharfage & Improvement Company; that on August 3, 1893, Tennant and the defendants as the Wharfage & Improvement Company, entered into a contract in writing, etc.; that on September 11, 1893, the defendants, the Wharfage & Improvement Company, and said parties composing the same, in pursuance of said contract and for the purposes therein mentioned, caused the said T. W. Lee, the then record owner of said 500 acres of land, to execute and deliver to said Tennant a good and sufficient deed therefor; that by reason of the contracts, agreements, and understandings referred to defendants were liable to the plaintiff Tennant for the indebtedness sued on.

A. O. Blackwell testified as follows, omissions therefrom being freely noted:

"I was well acquainted with T. W. Lee, J. I. Holmes, and the two Yorks. I was their at-

torney. I know the time the 500 acres of land [the land in controversy] were acquired and who paid for it. It was paid for by the La Porte Improvement Company. I recall in a general way the contract * * * dated August 2, 1894. * * * It was the same La Porte Wharfage & Improvement Company spoken of in that contract. I have seen the stockbook of said company. The stockbook was lost with the other records in the storm of 1900. All the records * * * were destroyed. I had charge of the office entirely, the legal department, the engineering, and the bookkeeping, titles, and everything else in connection with it. They used the name La Porte Wharfage & Improvement Company for a year or two after they came down here in connection with one or two matters. I think this tract of land was practically the only one. There may have been one other. * * * After it ceased to do business in its name the two Yorks, Holmes, and Lee looked after and controlled the property. It was a corporation; that is, there were articles of incorporation. * * * The records of the old Wharfage & Improvement Company, and most of the records of the Land Immigration Company were held by Mr. Holmes. All the companies were in a disorganized state at the time of the storm, and Mr. Holmes was undertaking to reorganize under the name of La Porte Improvement Company. * * * Almost all the records of our company, including title papers, were destroyed or so damaged by water that they were illegible. * * * The stock was all in the original stockbook just as it was issued. * * * The stock had not even been torn out, but a record had been made of it and it had been divided into four shares. * * * It was all signed. * * * I do not absolutely recall that contract in 1894 by which the stock was to go back to the improvement company, instead of the individuals. * * * They were at that time negotiating for the sale in 1894 of the La Porte, Houston & Northern Railroad Company (to promoters of a new railroad), * * * and they had hypothecated certain other lands in addition to this 500-acre tract. * * * The agreement was with the promoters that that 500 acres should be absolutely clear and turned over. That was the first agreement that was made, that that 500 acres should be released by the new organization of the railroad company, and turned over to the four members of the company clear. * * * Then it was agreed by the new promoters of the railroad company, who were to take over all the security that they should place $40,000 or $50,000 worth of bonds in between the Yorks and Holmes and Lee, and a possible foreclosure, and that was supposed to be ample. * * * That was the exact situation."

It is not necessary to summarize more of the testimony, or to discuss the refusal of the Court of Civil Appeals to consider—and perhaps for a sufficient reason—testimony more pertinent to the question under consideration than any that has been quoted or stated. It is apparent from that already summarized that an issue of fact was raised as to whether there was an interest in the land in Holmes and the Yorks at the time

of the execution of the contracts and conveyance mentioned above.

While the agreement of August, 1894, provided that on payment of certain indebtedness the land should be reconveyed to "the La Porte Wharfage & Improvement Company, or such persons as they may direct," and while Lee and the two Yorks and Holmes as defendants in the foreclosure suit pleaded defensive averments indicating a repudiation by them of any connection with the mortgage sought to be foreclosed, we cannot conclude that as a matter of law Holmes and the Yorks had no interest in the land, and that Lee did not hold such interests as they may have had in trust for them. Pomeroy's Eq. Jur. (4th Ed.) vol. 3, p. 224; Janes v. Throckmorton, 57 Cal. 368. Nor do we feel warranted in concluding as a matter of law that Tennant held the land in trust. It was, in our opinion, a question of fact, under the evidence stated, whether Lee conveyed the land to Tennant subject to a trust agreement dehors the deed and contract, which operated as a defeasance for the benefit of the assignees and legal representatives of Holmes and the Yorks to the extent of a three-fourths interest in the land. Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658.

There was evidence, in our opinion, that Lee held the land in trust on acquiring it from Carson. A. O. Blackwell testified, in addition to his testimony quoted above, to the effect that the La Porte Wharfage & Improvement Company paid for the land; that while he could not give all the reasons why Lee was selected to hold the title, it was placed in his name entirely for convenience in handling.

But, whether Lee held the title in trust or not, there is evidence that Lee conveyed to Tennant under a mortgage agreement to reconvey, on the condition stipulated, to Lee and his associates, or to such person as they might direct. This is a circumstance tending to prove that Tennant held not only as a mortgagee, but in trust as well, for his associates named.

[3] If Lee held the title entirely for convenience, it cannot be assumed that the trust, if any, under which Tennant held, was a resulting trust. It was not necessary therefore to show that the Yorks or their associates paid any part of the consideration for the land; the rule requiring such showing not being applicable in cases of express trusts. Oberlender v. Butcher, 67 Neb. 410, 93 N. W. 764; Perry on Trusts (6th Ed.) § 132; Pomeroy on Eq. Jur. (4th Ed.) § 1040.

Defendant in error relies on the defense of stale demand. Whether that defense is applicable under the facts is the third question presented.

[4, 5] If it should be found that the deed and contract of April 20, 1898, constitute a sale, the question of stale demand would not

arise. In the event it should not be so found, then defendant in error holds as devisee the interest of his father as mortgagee. A mortgagor of land remains the owner thereof and holds it subject to the rights of the mortgagee. Duty v. Graham, 12 Tex. 427, 62 Am. Dec. 534; Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284; Williamson v. Huffman, 19 Tex. Civ. App. 314, 47 S. W. 276 (error refused); Denison, etc., Ry. Co. v. Smith, 19 Tex. Civ. App. 114, 47 S. W. 278 (error refused). The mortgagee, or one holding the interest of the mortgagee under his will, is not entitled, in a suit of this character, to invoke the defense of stale demand. The conclusion reached follows, we think, from the holdings in the following cases: Duren v. Railway Co., 86 Tex. 287, 24 S. W. 258; N. Y. Tex. Land Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 206 (error refused); Loomis v. Cobb (Civ. App.) 159 S. W. 305 (error refused); Broussard v. Cruse (Civ. App.) 154 S. W. 347 (error refused).

It is not necessary to discuss the assignments relating to the defenses urged under the statutes of limitations further than to say that the evidence does not show conclusively a limitation title in defendant in error.

It is not necessary to pass upon other assignments raising subsidiary questions that may not arise on another trial.

We recommend that the judgments of the trial court and Court of Civil Appeals be reversed, and that the cause be remanded for another trial.

GREENWOOD, J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

PHILLIPS, C. J., did not sit in this case.