WM. DANIEL ET AL. V. JACKSON BRIDGES ET AL.

No. 2448.

1. **Outstanding Title.**—A conveyance by the holder of a headright land certificate located and surveyed for a given number of acres to be surveyed in the northeast corner of the survey, the land subsequently having been patented to the grantee named in the certificate, conveys the legal title to the land so described, and was admissible as an outstanding title in trespass to try title.

2. **Same—Deed by Tenant in Common.**—Such deed if made after the death

of the wife of the grantee named in the certificate, upon the patent being issued in name of the husband, would vest the legal title only to one-half undivided interest if the purchaser by recitals in the certificate or otherwise had notice of the rights of the heirs of the deceased wife.

3.  Jury—Legal Jury.—A special district judge appointed to try a cause appeared at the court house on the day fixed for the trial of the cause.  The court was in session, and the judge presiding declined giving way to the special judge.  The latter, in another room in the court house, proceeded to try the cause.  Not being able to obtain a list of the jurors in attendance for the week he ordered the sheriff to summon a jury for the cause.  *Held*, that a jury so summoned was not a legal jury, and objection being made, it is ground for reversal.

APPEAL from Wise.    Tried below before Hon. E. P. Marshall, special district judge.

Statement is in the opinion.

*Owsley & Walker*, for appellants.

*J. C. Kearby* and *R. D. Coughanour*, for appellees.—The deed from Bridges to Ardrey and Payne was a mere equity, having been made before the land was titled, and being an equity appellants in order to use the same in evidence must have connected themselves with it.  Deed from one tenant in common to a vendee is a mere equity.  Stewart v. Baker, 17 Texas, 417; McKey v. Welch, 22 Texas, 396; Dorn v. Dunham, 24 Texas, 376; Good v. Coombs, 28 Texas, 51.

No legal title to land exists till patent is issued, and a deed conveying interest in land not patented is only an equity.  See Lindsay v. Jeffray, 55 Texas, 634.

When a party seeks to prove an outstanding equitable title to defeat the plaintiff he must connect himself with such title.  Lindsay v. Jeffray, 55 Texas, 634, and authorities cited in opinion.

The grant to James Bridges as a married man concludes all subsequent inquiry into that fact.  Babb v. Carroll, 21 Texas, 767–8; Bomer v. Hicks, 22 Texas, 155; Johnson v. Smith, 21 Texas, 722.

HOBBY, JUDGE.—This was an action of trespass to try title, brought by James and Jackson Bridges against Jesse Duren in 1859, to recover an undivided one-half interest in a league and labor of land granted to the father of plaintiffs, James Bridges, and situated in Denton County. Duren died and his administrator became a party.  A. B. Hardin and C. Q. Haley also were joined as defendants in the suits.  The appellant Daniels was made a defendant in 1870, and appellants Henry Norton, John Galloway, Wm. Brown, G. W. Brown, and others were made defendants in 1882.

Duren claimed title to 4025 acres of the land under a deed alleged to have been executed to him by James Bridges, the patentee, in 1852.

Hardin and the heirs of Haley claim 2000 acres of the land under a bond for title executed by Duren to them in December, 1853, and allege that they had no notice of any prior conveyance by Bridges of, the land.

The plaintiffs claim that the land was the community property of their father James Bridges and their mother Elizabeth Bridges, his wife, and sue as her heirs to recover her undivided half. The appellants answered by a general denial, pleas of the statute of limitation of three, five, and ten years, and appellant Daniels suggested valuable improvements in good faith of the value of $9496.

The claims of a number of the defendants appear to have been adjusted pending the suit by decrees agreed upon between them and the plaintiffs and Hardin and Haley. These decrees vested in the defendants named in them title to about 1207 acres of the league and labor. The appellants, however, seem to have no connection with them. The suit was discontinued as to a number of the other defendants.

A judgment was rendered in favor of the plaintiffs Jackson Bridges and A. B. Hardin and the heirs of C. Q. Haley and other defendants, against the defendants Wm. Daniels, W. Brown, G. N. Brown, Henry Norton, John Galloway, —— Byrne, and —— Rodgers, and others, for the recovery of about 3398 acres of the league and labor.

From this judgment this appeal is prosecuted, and the question involved is, as we understand under the agreement filed herein, the title to the 580-acre tract in the northeast corner of the survey claimed by appellants.

The plaintiffs Jackson and James Bridges claim that the land was the community property of James Bridges and his wife Elizabeth Bridges, and that they were the only heirs at law of said James and Elizabeth, and as such entitled to one-half as the community interest of their mother.

The land was granted to James Bridges by virtue of certificate No. 242, issued in February, 1838, by the Board of Land Commissioners of San Augustine County.

Duren, who was originally sued, derived his title to 4025 acres from James Bridges, Jr., the patentee, under a deed alleged to have been executed by said Bridges to him in February, 1852.

The defendants Hardin and Haley claim 2000 acres under a bond for title made by Duren in December, 1853, to be selected out of the 4025 acres conveyed by Bridges.

As stated before, the land was patented to James Bridges, the father of the plaintiffs, on the 22d February, 1847, by virtue of the headright certificate referred to. Appellees Hardin and Haley claimed that they had purchased the same from Jesse Duren in December, 1853, for a valuable consideration, and without notice of any prior conveyance; that Duren had purchased from the patentee in a like manner in February, 1852.

The defendants in the court below (appellants here) offered in evidence, to show a superior outstanding title to this land, a deed executed by the

patentee Bridges to James M. Ardrey and Chilton Payne, dated April 22, 1846, duly acknowledged on the same day by the grantor before two justices of the peace of San Augustine County. This deed described the land conveyed as 580 acres lying upon the headwaters of the Trinity River, in the county of Fannin, to which he was entitled by virtue of certificate No. 242, issued by the Board of Land Commissioners of San Augustine County, dated February 1, 1838, surveyed on October 26, 1841, and describing the land conveyed as lying in the northeast corner of said league and labor survey, and to be surveyed from said northeast corner in a square running equal distances on the north and east lines.

To the introduction of this deed in evidence to prove a superior outstanding title the objections by the appellees were that it was an equitable title and the defendants had not connected themselves therewith; that it was a stale demand and defendants Hardin and Haley had no notice of said deed, and that no person had claimed or asserted title to the land under the same.

These objections were sustained by the court, and the deed excluded upon the ground, as stated in the explanation made of the bill of exceptions by the court, that the deed was a mere equity and not a deed, and no party to the suit claimed under it. The exclusion of this deed offered by appellants to prove an outstanding title to this land superior to the plaintiffs' and Hardin and Haley in a third party was error. This deed was an absolute conveyance of the 580-acre tract of land therein described. The legal title to the land upon the issuance of the patent to James Bridges in February, 1847, passed by estoppel to Ardrey and Payne. Johnson v. Newman, 43 Texas, 642; Adams v. House, 61 Texas, 641. The deed by operation of law gave constructive possession of the land therein conveyed to the grantees, and the doctrine of stale demand did not apply.

The deed from James Bridges to Duren, under whom Hardin and the Haley heirs claimed, was executed in 1852, several years after the title to the 580 acres had passed out of Bridges.

The deed to Ardrey and Payne was admissible whether appellants connected themselves with it or not. But while this is true it does not necessarily follow that its effect would be to defeat the rights of those claiming through Mrs. Elizabeth Bridges to recover the entire 580-acre tract as against persons not connecting themselves with the Ardrey and Payne title. If it shall appear that there were such recitals in the certificate by virtue of which the land was patented to James Bridges in 1847 as would have put Ardrey and Payne on notice of the rights of the heirs of Mrs. Bridges in the land, or if Ardrey and Payne or those claiming under them had notice of their rights in any other manner, then Ardrey and Payne or such persons so holding under them with such notice would be entitled to one-half of the 580-acre tract and the other half they would

hold in trust for such heirs. As against any persons claiming said tract and not connecting themselves with said Ardrey and Payne, the heirs of Mrs. Bridges would be entitled to recover all of the 580-acre tract.

This results from the fact that in such a case the heirs of Mrs. B. and Ardrey and Payne or their vendees would be tenants in common in effect, either of whom would be entitled as against a mere wrongdoer to recover the entire tract of land. It devolved on the plaintiffs and the defendants Hardin and the heirs of Haley, under their pleadings, to show that the superior title to this land was in them before they could recover. This Hardin and Haley failed to do, as it appears that the title of James Bridges to this tract had passed from him to Ardrey and Payne before the conveyance to Duren in 1852, unless they can show themselves to be innocent purchasers without notice of this deed to Ardrey and Payne. Whether the plaintiffs as the heirs of Mrs. Bridges have any right to the 580-acre tract conveyed by their father to Ardrey and Payne or to any part of this tract depends upon the question whether Ardrey and Payne purchased without notice of their rights, a question in the present state of the record not necessary to be considered.

The judge of the District Court of Denton County being disqualified by reason of the fact that he appears to have been a counsel in the cause, the Governor appointed and duly commissioned a special judge to try the same, who upon proper application therefor changed the venue to Wise County, where it appears the disqualified district judge also presided. A second special judge was appointed in the last named county, who set the cause for trial on the 17th day of March, 1886. On that day the special judge, finding the District Court of Wise County in session, repaired to a room adjoining that in which the court was in session and called this cause for trial.

The bill of exceptions recites that the district judge, who was engaged in the trial of cases requiring the services of the jury panel then in attendance, declined to comply with the request made by the special judge that he be furnished with said panel or a sufficient number thereof for the trial of this cause. Thereupon the sheriff was directed by the special judge to summon a venire of 24 persons to serve as jurors. This order having been executed and the persons summoned having appeared, the trial was proceeded with over the objections of the defendants, made upon the grounds that they had previously, in accordance with law, demanded a jury in this case and had deposited the fee prescribed, and that they were therefore entitled to a jury trial as provided by the statute.

These objections were overruled, and the action of the court in overruling them is assigned as error.

"In all causes in the District Court the plaintiff or defendant shall upon application made in open court have the right of trial by jury; but no jury shall be empaneled in any civil case unless demanded by a party

to the case and a jury fee be paid by the party demanding a jury, for such sums and with such exceptions as may be prescribed by the Legislature." Const., art 5, sec. 10.

The exercise of the right thus secured by organic law, in its application to judicial controversies affecting the rights of property, is promoted and protected by statutory safeguards with jealous particularity. The manner in which jurors shall be drawn and selected by commissioners, themselves qualified, appointed, sworn, and instructed for the purpose, is regulated with a precision leaving nothing to intendment by title 57, chapter 2, of the Revised Statutes. It is there provided that "if from any cause such commissioners have not been so selected previously the court shall appoint, test, and instruct them to draw a sufficient number for the dispatch of business." Rev. Stats., art. 3022.

If from any cause a sufficient number of jurors drawn by the commissioners are not in attendance, or the panels are reduced below a number adequate to the demands of the docket, the sheriff may be directed after the proper oath is administered to him to supply the deficiency. But the law invests no court with the power to order the sheriff summon a *venire* for the trial of a civil cause.

In this case there was no occasion it appears for selecting commissioners, nor was there any necessity for directing the sheriff to summon jurors; the petty jury panel drawn at the preceding term was in attendance upon the District Court, and the cause should not have been called for trial until the special judge could require the clerk to furnish the defendants with the proper jury lists. The defendants having complied with the law were entitled to have their case tried by a jury as provided by the statute.

For the errors mentioned we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted February 12, 1889.