HOLMES et al. v. TENNANT. (No. 7582.)

(Court of Civil Appeals of Texas. Galveston. June 5, 1918. Rehearing Denied April 17, 1919.)

1. APPEAL AND ERROR ⬤⟹759 — ASSIGNMENTS OF ERROR—NECESSITY.

Where there are no assignments carried into the brief presenting the exclusion of evidence as error, it cannot be considered.

2. APPEAL AND ERROR ⬤⟹742(1) — ASSIGNMENTS OF ERROR—PROPOSITIONS.

Under rule 30 of the Court of Civil Appeals (142 S. W. xiii), an assignment, submitted as a proposition, that "the court erred in overruling plaintiffs' motion to withdraw their announcement of ready for trial and continue this cause, as shown by plaintiffs' bill of exceptions," etc., to which there was no proposi-

tion subjoined, cannot be considered, not being in itself a proposition.

3. CONTINUANCE ⬤⟹23 — OBTAINING EVIDENCE—DISCRETION.

In suit involving title to land it was not abuse of discretion to refuse continuance to enable plaintiffs to obtain evidence that by lapse of time a corporation, alleged formerly to have owned the land, had become dissolved, and its property thereby vested in those claiming under its only stockholders, where there was, up to that point in the trial, no evidence that plaintiffs were in fact the sole stockholders of the company.

4. TRESPASS TO TRY TITLE ⬤⟹18—DEFENSES —TITLE IN THIRD PERSON.

It is not a defense in trespass to try title that the land has been sold under execution against one of the cotenants thereof, where defendant does not connect himself with the outstanding title thereby created.

5. APPEAL AND ERROR ⬤⟹673(2)—EXECUTION —SALE—COLLATERAL ATTACK.

On appeal in trespass to try title, objection as to validity of execution sale of the property relied on by appellee, could not be considered where matters alleged as affecting its validity did not appear from the record.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by Mrs. I. R. Holmes and others against J. A. Tennant. From judgment for defendant, plaintiffs appeal. Affirmed.

A. O. Blackwell, A. B. Wilson, and Andrews, Streetman, Burns & Logue, all of Houston, for appellants.

Moody & Boyles and Wm. W. Anderson, all of Houston, for appellee.

GRAVES, J. Mrs. I. R. Holmes, widow, A. N. McKay, Flora B. Lee, Margaret St. John Lee, James H. Lee, Caroline Lee Hoskins and husband, Charles S. Hoskins, plaintiffs, brought this suit against Joseph Allen Tennant, defendant, to recover 500 acres of land in Harris county, Tex., out of the Richard Pearsall one-third league. Their petition contained, first, a count in trespass to try title; and, second, among other detailed allegations of facts and circumstances under which they claimed title, this special plea as to its immediate source:

"For further cause of action plaintiffs represent to the court that the above-described tract of land was purchased by T. W. Lee, I. R. Holmes, A. M. York, and J. H. York, the title thereto standing in the name of T. W. Lee upon the records, who held the same in trust for the use and benefit of himself and the said I. R. Holmes, A. M. York, and J. H. York."

Pursuant to the quoted averment, the proof they offered showed that one of the plaintiffs held a deed from the two Yorks, executed in 1910, purporting to convey the

land in controversy, while different others of them were the legal representatives of Holmes and Lee, and as such took whatever title the two last named had at their deaths; so that the title both pleaded and proved by plaintiffs was specifically limited by them to such as was possessed by and came severally to them from I. R. Holmes, T. W. Lee, J. H. Lee, and A. M. York.

In answering defendant Tennant pleaded not guilty, and the three, five, and ten year statutes of limitation, his proof showing that he had acquired all the title held in the land by J. H. Tennant, who was his father. As against his pleas of limitation, by supplemental petition the plaintiffs had alleged the absence of Tennant from Texas for a specified time.

Following the return of an instructed verdict for the defendant, judgment below was rendered in his favor against plaintiffs, from which they prosecute this appeal.

While a number of interesting questions are very ably presented in the brief of appellants, after a careful consideration of the entire record we conclude that it contains no evidence connecting either I. R. Holmes, A. M. York, or J. H. York at any time with the title to the land sued for, and that whatever title T. W. Lee acquired was conclusively shown to have finally passed out of him prior to his death, from which it follows that appellants showed no title.

Stated in a manner more directly responsive to this special allegation as to the exclusive source of the title claimed, we think the record properly before this court wholly fails to show that Lee bought and held for himself and as trustee for the other individuals named in the plea.

This conclusion, if well founded, necessarily determines the merits of the appeal; consequently what is deemed a sufficient statement of such evidence and considerations as impel this court to reach it will, we think, properly conclude the opinion.

The transactions depended upon to show the trusteeship of Lee began with a straight deed to the land in controversy to him alone from John L. Carson (the latter being the agreed common source of title to the land between the parties to this suit), dated February 13, 1893, for a consideration of $4,500, and containing no recitations indicating that he took title for others than himself. The only testimony as to who paid for the land was that of Mr. A. O. Blackwell, who said that the consideration was paid by the La Porte Improvement Company, a corporation. There is no evidence of any agreement between Lee and this Improvement Company concerning such payment, or between him and Holmes, or either of the Yorks, that he should hold the land in trust for any one of them, nor that any of the three last named had furnished part of the purchase money. Finally, there is no testimony this court is at liberty to consider indicating that the four individuals mentioned owned all the stock of the Improvement Company, even if that showing was considered material.

Under their fifth assignment appellants only complained of the exclusion of that part of Mr. Blackwell's testimony shown in their bill of exceptions No. 4, which merely embraced the following:

"Q. Do you know why the deed was placed—the title to it was placed—in T. W. Lee? Do you know? A. I cannot give all the reasons why T. W. Lee was selected to hold the title at this time.

"Q. Well, do you know why it was placed in his name? A. It was placed in his name entirely for convenience in handling."

[1] In the statement under this assignment much further testimony, incorporated in other and different bills of exceptions, is set out; but there are no assignments carried into the brief presenting its exclusion as error, and, under objection of the opposing party, this court, being limited to the errors assigned, cannot consider it.

Assuming, then, there being none other before us, that the testimony thus appearing in bill No. 4 was admissible—and we think it was—it falls far short, in the face of the unconditional deed to him already described, of amounting to proof that Lee took the title therein conveyed for himself and in trust for three other particular persons, and so held it for their convenience. Indeed, if this part of Mr. Blackwell's testimony be connected up with his previously mentioned statement that the La Porte Improvement Company paid for the land, the result would be a plain, if not necessary, inference that it was placed in Lee's name entirely for the convenience of that corporation. The record discloses nothing further, as to this La Porte Improvement Company, except that at some later date, not given, Mr. Holmes, who held the records of the La Porte Wharfage & Improvement Company, of which T. W. Lee, A. M. and J. H. York were officers, and most of those of the Interior Land & Immigration Company, was undertaking to reorganize under the name of the La Porte Improvement Company. It may be that Mr. Blackwell used the two names La Porte Improvement Company and La Porte Wharfage & Improvement Company interchangeably for one and the same corporation, and the brief for appellants apparently so assumes, but there is nothing in the record to indicate that they were. Mr. Blackwell did say, however, in reference to the Wharfage Company, that "after it ceased to do business in its name the two Yorks, Holmes, and Lee looked after and controlled the property."

The sixth assignment, submitted as a proposition. is the following:

"The court erred in overruling plaintiffs' motion to withdraw their announcement of ready for trial, and continue this cause, as shown by plaintiffs' bill of exception No. 5, which is hereby referred to and made a part hereof."

[2] There is no proposition subjoined, and, contending that it is not in itself a proposition, appellee makes what is deemed well-taken objection to this court's considering it. Rule 30 (142 S. W. xiii); Ry. Co. v. Boykin, 85 S. W. 1164; Kilday v. Perkins, 90 S. W. 215; Grand Lodge v. Williams, 108 S. W. 196; Mitchell v. Robinson, 162 S. W. 445.

[3] If the assignment were considered, however, it could not prevail, because of the previously mentioned fact that the record before us fails to show, not only that Lee held the land for himself and in trust for the three others under whom appellants claim, but also that the four of them together were the sole stockholders of the La Porte Wharfage & Improvement Company. In the motion, filed three days after the trial began, the overruling of which this assignment seeks to present as error, assumption is made that these four alleged predecessors of appellants in title were such sole stockholders, and upon that as a basis the principal end sought by means of it was an opportunity of further showing that by lapse of time the corporation had become dissolved and its property thereby vested in those claiming under its only stockholders; but, with no such evidence in the record as presented here, obviously a showing that the court refused at that stage to halt the trial for the purpose of obtaining what, in its absence, could avail appellants nothing, would constitute no abuse of its discretion.

The title having passed through the deed from Carson into Lee in February, 1893, on September 11th of that year he mortgaged the land to J. H. Tennant, to secure certain indebtedness owed to Tennant by the La Porte, Houston & Northern Railroad Company, and the La Porte Wharfage & Improvement Company, in which mortgage it is provided that upon the payment of the indebtedness Tennant should reconvey and deed the land to Lee, I. R. Holmes, A. M. York, and J. H. York, or to such persons as they might direct the deed to be made to; but by a later contract of August 2, 1894, the provision concerning the deeding of the land to Lee, Holmes, and the two Yorks was eliminated, and in lieu thereof it was provided that upon payment of the indebtedness it should be deeded to the La Porte Wharfage & Improvement Company. There is nothing even tending to show that Holmes, or either of the Yorks, nor, indeed, that Lee himself, owed any part of the debt for which the land was thus mortgaged to Tennant, but, so far as appears, that was the exclusive obligation of the two corporations, La Porte, Houston & Northern Railroad Company, and La Porte Wharfage & Improvement Company, and Lee, at the latter company's request, pledged the land as security for its payment.

There is no evidence that the indebtedness referred to was ever paid. On the same date with the mortgage, September 11, 1892, Lee also deeded the 500 acres to J. H. Tennant, this recital appearing in the deed:

"This deed is made at the request of the La Porte Wharfage & Improvement Company, and is covered by an agreement of this date, which is made a part hereof, between the grantee and them."

At this point it should be stated that prior to Lee's thus mortgaging the land—that is, on August 3, 1893—an agreement had been made between the La Porte Wharfage & Improvement Company, La Porte, Houston & Northern Railroad Company, and J. H. Tennant, whereby the latter was to advance certain funds needed in the construction and completion of the railroad company's line of railway from Houston to La Porte, Tex., in consideration of which the Wharfage & Improvement Company, since some lands it owned at La Porte would be increased in value by the building of the railroad, among other things, agreed to cause to be conveyed to Tennant the 500 acres in question, "with power of sale as security for such sums of money as may have been advanced by him, the said Tennant to hold the same as collateral security for said loan, and to reconvey the same to said company, or to such party as it may direct, after the said sum of money and interest shall have been prepaid by the sales as herein provided."

As accurately reflecting the record, this statement of further proceedings, with very slight changes, is taken from pages 3 to 5, inclusive, of the brief of the appellee:

"On February 28, 1898, J. H. Tennant filed a suit against the La Porte Wharfage & Improvement Company and the La Porte, Houston & Northern Railroad Company, and also against T. W. Lee, to foreclose the above-described mortgage. Numerous new parties were made by amended original petitions filed from time to time, among others A. M. York, J. H. York, and I. R. Holmes, who answered, repudiating any connection whatever with the mortgage. On April 20, 1898, J. H. Tennant executed a deed conveying the land to O. C. Drew, trustee, and contemporaneously therewith an instrument was executed by T. W. Lee, J. H. Tennant, and O. C. Drew, trustee, reciting that Tennant had that day, by the agreement and consent, and at the request of T. W. Lee, sold and conveyed the land to O. C. Drew, trustee, and providing that Lee should have an option to purchase the land at a certain price named, and within a certain limited time, and that if he failed to exercise such option that Drew should convey the land to Tennant, his heirs or assigns, and that such deed so made by Drew should bind Lee, Tennant, and Drew, their heirs and legal representatives, to warrant and forever

defend against any and all claims whatsoever arising by, through, or under them or either of them. No further action was taken in the foreclosure suit, except that it remained on the docket for several terms, the minutes showing that it was continued three or four times, and once reinstated after having been dismissed for want of prosecution, and was dismissed finally for want of prosecution, on November 14, 1899.

"On May 18, 1899, O. C. Drew, trustee, conveyed the land to L. E. Brown, and on November 17, 1899, L. E. Brown conveyed it to J. H. Tennant. J. H. Tennant died, and by his will, which was probated September 6, 1905, he devised this land to appellee. T. W. Lee died, leaving a will, which was probated in the state of Idaho on October 1, 1909, in which will no mention is made of any property situated in Texas, and the will was never probated in Texas. I. R. Holmes died at some date not shown by the record, and his will was probated in Harris county, Tex., but it does not appear that any mention was made of any interest in this land in his will.

"On October 17, 1910, appellant A. N. McKay obtained a deed from A. M. York and J. H. York, who then resided in Denver, Colo., purporting to convey the land, the consideration being the sum of $200, and the deed reciting that it is without warrant of any nature, express or implied.

"O. C. Drew died prior to the filing of this suit. The land was duly assessed for taxation by J. H. Tennant and those claiming under him, for the years 1898 to 1916, inclusive, and during each and all of those years there was no assessment of the land made by any of the appellants, nor by I. R. Holmes, T. W. Lee, J. H. York, or A. M. York. Appellee and those under whom he claims, and whose estate he has, have paid all taxes for all of the years 1898 to 1916, inclusive, under the assignments mentioned, and no taxes have been paid for any of these years upon the land by any of the appellants, nor the parties under whom they claim, viz. I. R. Holmes, T. W. Lee, J. H. York, and A. M. York.

"Appellee, through his tenants, has been continuously in possession of the land since January 1, 1907, there being, however, several years during which he was absent from the state attending school. There is no evidence that appellants, or those under whom they claim, have asserted any claim to this land since the date of the deed to O. C. Drew, on April 20, 1898, until the filing of this suit on July 14, 1915.

"Under a judgment in favor of American Tube & Iron Company and against T. W. Lee and others, an execution issued on November, 16, 1895, and was levied on the land in controversy, which was sold thereunder on the first Tuesday in February, 1896, to the American Tube & Iron Company."

In this statement of the evidence it is not thought that anything has been omitted which could fairly be considered as tending to connect Holmes and the Yorks with the title, or to indicate a trusteeship in Lee for any of them. The appellants repeatedly assert that the title was shown to be in these four, and a large part of their brief is then devoted to the further contention that the transactions represented by the deed and contract of April 20, 1898, between Tennant, Lee, and Drew, constituted a mortgage, not a conditional sale of the land; consequently that the interest of the four persons named was not shown to have passed out of them. While we think there was sufficient admissible proof offered to at least raise a question as to whether those instruments, taken together, did in fact only amount to a mortgage, the matter becomes immaterial, and the question wholly academic, if, as has been indicated, and contrary to the assumption of appellants, the record discloses no interest upon the part of Holmes and the Yorks in the land as the subject-matter of the two instruments in question, but does reflect the fact that whatever interest Lee had passed out of him prior to his death. That both these results appear is not, we think, subject to doubt.

The unchanged fact, running throughout the entire course of the transactions concerning the land, that under none of the instruments was it to be conveyed at all until the debt to Tennant had first been paid, must not be overlooked. There is no pretense of proof that that contingency ever arose; and just how it can still be said that title ever vested either in the Wharfage Company, or in the individuals named in the quoted special pleading of appellants, other than Lee, is not clear. Surely by no stretch of construction nor indulgence of presumption could Mr. Blackwell's statement, that after the Wharfage Company ceased to do business the Yorks, Holmes, and Lee looked after and controlled its property, be held to constitute evidence that these persons individually acquired title to that corporation's lands, even if it had first been shown to own any. Indeed, all of them except Lee, as has already been pointed out, when made parties to Tennant's suit to foreclose the mortgage given him upon the land here involved, by Lee and the two corporations, denied any individual connection with it.

[4, 5] The divesting while he yet lived of the title that went into Lee is equally well established, as well as the fact that he lived more than 11 years after executing the instruments of April 20, 1898, and not only never made any claim to the land, nor assessed it for or paid taxes on it, but failed to mention it in his will. As to the sale of the land in 1896 to the American Tube & Iron Company under execution against Lee, if it had been shown that at that time he was only a cotenant in ownership with Holmes and the Yorks, since the appellee here did not connect himself with the outstanding title thereby created, we agree with appellants that such sale would have been ineffective as against them. Daniel v.

Bridges, 73 Tex. 149, 11 S. W. 121; Hintze v. Krabbenschmidt, 44 S. W. 38; Caudle v. Williams, 51 S. W. 560. This principle is not available to them, however, under our finding that no such cotenancy was shown, nor is any other sufficient impediment to the divesting of Lee's title by that sale pointed out. It is true objection is offered that the execution issued out of a district court of Texas without the official seal of its clerk thereon, and that the attached notice of sale showed it advertised for other than a legal sale day; but these matters do not appear from the record, and the suggestion is therefore abstract.

Concluding that the court did not err in directing the verdict all assignments are overruled, and an order affirming the judgment has been entered.

Affirmed.

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes